**Jackie Russell KEETER, Appellant,**

v.

**The STATE of Texas.**

No. PD–1012–03.

Court of Criminal Appeals of Texas.

April 6, 2005.

Phil Robertson, Clifton, for appellant.

Jeffrey L. Van Horn, First Assist. St. Atty., Matthew Paul, State's Attorney, Austin, for state.

## OPINION

PRICE, J., delivered the opinion of the Court, in which KELLER, P.J., and WOMACK, KEASLER, HERVEY, and COCHRAN, JJ., joined.

The appellant appealed from the denial of his motion for new trial after a Hamilton County jury convicted him of indecency with a child. He claimed that the trial

court erred in denying his *Brady*[1] claim. The Court of Appeals held that (1) the appellant either preserved his *Brady* claim or did not need to and (2) the appellant had proved his *Brady* claim.[2] We granted review of this case to determine whether the Court of Appeals was correct. We will reverse because the appellant did not preserve his complaint for appellate review.

### I. Facts and Procedural History

The appellant was convicted of indecency with a child. The complainant was his wife's daughter from a prior marriage. After being convicted and sentenced, he filed a timely motion for new trial. The text of the motion reads as follows:

> The verdict in this cause is contrary to the law and the evidence.
>
> Evidence establishing the defendant's innocence was withheld by a material prosecution witness.
>
> Defendant prays that the Court set aside the judgment of conviction entered in this cause and order a new trial on the merits.

The claim seems to be one of actual innocence. The appellant did not mention *Brady*.

Along with the motion, the appellant submitted affidavits from the complainant and from Rhonda Taylor King, the complainant's stepmother and the outcry witness at trial. In the complainant's affidavit, she recanted her trial testimony and explained that she had made up the story so that she could live with her father for the summer. In Rhonda's affidavit, she said that, before the trial, she had told the prosecutor that she did not believe the complainant's allegation against the appel-

---

1. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

2. *Keeter v. State*, 105 S.W.3d 137, 144, 147 (Tex.App.-Waco 2003); *id.*, at 149–50 (Davis, C.J., concurring).

lant. She also said that the prosecutor told her that he probably would not put Rhonda on the stand as a result. But, the record shows that Rhonda did testify during the trial.

The trial court held a hearing on the motion for new trial. During the hearing, Rhonda testified. She said that she had never believed the complainant's allegation that the appellant had committed the offense. She repeated her claim that, before the trial, she had told the prosecutor that she did not think that the appellant had committed the offense. She explained that she did not believe the complainant because the complainant repeatedly claimed and then denied that the offense happened.

The complainant's father, Travis King, also testified that he had told the prosecutor that he did not believe the complainant's allegation. The appellant's trial attorney testified that the prosecutor never told her that Rhonda and Travis had said that they did not believe the complainant.

The complainant's testimony was consistent with her affidavit recanting her trial testimony. The complainant's mother testified that she had never believed the complainant. A sheriff's office investigator and a Texas Department of Protective and Regulatory Services investigator also testified about their meeting with the complainant after she recanted her trial testimony.

After the hearing on the motion, the State and the appellant submitted cases that they believed were relevant to the trial court's decision on the motion. Attached to the appellant's letter to the trial court were copies of three opinions that dealt with witness recantations and the effect of the State's knowledge of perjured testimony on a claim of new evidence of innocence.[3] The State submitted a letter directing the trial court's attention to several cases, all of which dealt with the credibility of recanting or newly discovered witnesses.[4] None of the cases submitted by the appellant or the State dealt with *Brady* claims.

The trial court denied the motion without mentioning a *Brady* claim. The trial court issued a written order explaining its reasons for denying the motion.

I have finally had a chance to review your submissions of case authority in connection with this motion for new trial. I don't find the testimony that recants the trial testimony to be credible. To do so would require me to believe that this young child made up her testimony because her (younger!!!) sister told her she would have to make something up about the [appellant] so she could get to go and spend the summer with her dad, when she did not previously know her dad was coming and when she had not seen him in two years.

**3.** *Ex parte Elizondo*, 947 S.W.2d 202 (Tex. Crim.App.1996) (holding that bare innocence claims may be brought in post-conviction habeas proceedings); *Tuffiash v. State*, 878 S.W.2d 197 (Tex.App.-San Antonio 1994, pet. ref'd) (holding that post-conviction habeas relief is an appropriate remedy for a claim of newly discovered evidence of actual innocence when knowledge of perjurious testimony can be imputed to the prosecution); *Villarreal v. State*, 788 S.W.2d 672 (Tex.App.-Corpus Christi 1990, no pet.) (holding that the trial court abused its discretion in failing

to grant motion for new trial based on victim's recantation).

**4.** *Moreno v. State*, 1 S.W.3d 846 (Tex.App.-Corpus Christi 1999, pet. ref'd); *Hoyos v. State*, 951 S.W.2d 503 (Tex.App.-Houston [14th Dist.] 1997), *aff'd by* 982 S.W.2d 419 (Tex.Crim.App.1998); *Driggers v. State*, 940 S.W.2d 699 (Tex.App.-Texarkana 1996, pet. ref'd); *Ashcraft v. State*, 918 S.W.2d 648 (Tex.App.-Waco 1996, pet. ref'd); *Banda v. State*, 727 S.W.2d 679 (Tex.App.-Austin 1987, no pet.).

On direct appeal, the appellant complained that the trial court erred in failing to grant the motion for new trial because of (1) a *Brady* violation and (2) the complainant's recantation. The Court of Appeals reversed, holding that the trial court abused its discretion in denying the motion for new trial because the complainant made a credible recantation.[5] On discretionary review, we reversed and remanded to the Court of Appeals to consider the appellant's other point of error.[6]

On remand, the Court of Appeals, in a split decision held that the State withheld favorable and material information in violation of *Brady*.[7] As a result, the Court of Appeals reversed the conviction a second time. The State filed a motion for rehearing, which was denied. On the State's petition for discretionary review, the Court of Appeals withdrew its prior opinion and issued a new opinion, holding that the appellant either preserved or did not need to preserve his *Brady* claim for appeal and that the State violated *Brady*.[8]

We granted the State's petition for discretionary review to determine (1) whether a *Brady* claim must be preserved, (2) if so, whether the appellant preserved his claim

for review, and (3) if preserved whether the Court of Appeals erred in finding that the State violated *Brady*.[9]

## II. Preservation of Error

The State argues that the appellant did not preserve for appellate review his *Brady* claim because the appellant did not mention *Brady* in his motion for new trial or during the hearing on the motion. Also, the State points out that the trial court did not mention *Brady* in its order denying the motion.

The appellant argues that the claim was preserved for review because the *Brady* allegations were apparent from the motion and from the hearing on the motion. The appellant says that the *Brady* material was intertwined with the recantation evidence and that the State never objected to the scope of the hearing.

■■■ Because of the nature of the appellant's complaint on appeal—that the trial court erred in denying his motion for new trial—he must have raised the *Brady* complaint at some point during the motion for new trial proceedings to preserve the

5.  *Keeter v. State*, 43 S.W.3d 667, 676 (Tex. App.-Waco 2001).

6.  *Keeter v. State*, 74 S.W.3d 31, 39 (Tex.Crim. App.2002).

7.  *Keeter v. State*, 97 S.W.3d 709 (Tex.App.-Waco 2003).

8.  *Keeter*, 105 S.W.3d at 144, 147 (holding that *Brady* claims need not be preserved for appellate review and that the State withheld favorable and material information); *id.*, at 149–50 (Davis, C.J., concurring) (concluding that the appellant did preserve error); *see id.*, at 154 (Gray, J., dissenting) (concluding that the appellant did need to preserve the *Brady* claim for review and that he did not preserve the complaint).

9.  The precise grounds on which we granted review are

1.  Did the Court of Appeals err by concluding that a *Brady* violation could be raised for the first time on appeal?
2.  Did the Court of Appeals err by concluding that the appellant had preserved for review his contention that the State had committed a *Brady* violation?
3.  Did the Court of Appeals err by failing to address a potentially dispositive argument raised by the state?
4.  Did the Court of Appeals apply an improper standard of review in determining whether the trial court should have granted a new trial?
5.  Did the Court of Appeals err in accepting, as credible, testimony which was contrary to the trial court's ruling on a motion for new trial?

complaint for appellate review.[10] In this case, the appellant was required to make the trial court and the State aware of his complaint before raising it on appeal: The trial court cannot be said to have erred in denying a motion for new trial on a basis that was not presented to it.

■■■ We have said that we should avoid splitting hairs when determining whether a claim has been procedurally defaulted.[11] "All a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." [12] We should consider the context when we determine whether a party has preserved a complaint for appeal.[13]

We recently held in *Gallups v. State* that the defendant had preserved for review his claim about consent to enter his home, even though he failed to mention Code of Criminal Procedure Article 14.05(1) in his motion to suppress and during the hearing.[14] The defendant had filed a motion to suppress in which he claimed that his arrest violated Article 14.04. We explained that the issue was preserved for review because it had been litigated during the hearing on the motion.[15] More specifically, the facts of that case show that the legal and factual questions about the officer's consent to enter the home and the

authority to arrest the defendant in the absence of a warrant were intertwined.

*Gallups* is distinguishable from the present case because both the factual and legal issues were intertwined and related. In this case, the factual issues may have been intertwined, but the legal issues were not.

■■■ The evidence that the appellant claims preserved the *Brady* issue for review were relevant to the appellant's actual innocence claim. The fact that Rhonda and Travis claimed to tell the prosecutor before trial that they thought that the complainant was lying supported the complainant's recantation because it was some evidence, purportedly existing before the trial, that was consistent with the recantation. The appellant did not mention *Brady* in his motion or during the hearing on the motion, and did not include any *Brady*-related cases in his post-hearing submission. And a *Brady* claim requires that the defendant show by a preponderance of the evidence that evidence was withheld, that it was favorable to the defense, and that the evidence was material.[16]

The record supports the conclusion that neither the State nor the trial court understood that the appellant was raising a *Brady* claim. The prosecutor to whom Rhonda and Travis allegedly spoke to about the complainant's lying was present in the court room and cross-examined the witnesses. He did not admit, deny, or explain the allegation during the hearing on the motion for new trial,[17] even though another

---

**10.** We do not address whether a defendant may raise for the first time on appeal a more general *Brady* claim that the State withheld favorable and material evidence from the defendant because it is not presented in this case.

**11.** *Lankston v. State,* 827 S.W.2d 907, 909 (Tex.Crim.App.1992).

**12.** *Ibid.*

**13.** *Ibid.*

**14.** *Gallups v. State,* 151 S.W.3d 196, 198 n. 1 (Tex.Crim.App.2004).

**15.** *Ibid.*

**16.** *Ex parte Richardson,* 70 S.W.3d 865, 870 (Tex.Crim.App.2002).

**17.** *Compare Ramon v. State,* 159 S.W.3d 927, 931 (Tex.Crim.App.2004) (stating that State and defense lawyers should not testify before the jury).

prosecutor was present. Had the prosecutor been aware that the appellant was making a *Brady* claim, he could have testified about it. Also, the trial court's order denying the motion does not mention *Brady*.

All of these facts indicate that the appellant did not raise a separate claim related to *Brady*. As a result, the appellant did not preserve for appellate review his complaint that the trial court erred in failing to grant his motion for new trial on the basis of a *Brady* violation. Because we conclude that the appellant was required to preserve this particular claim for appellate review, and because the record indicates that the appellant did not, we need not reach the other grounds on which we granted review.

### III. Conclusion

The appellant did not preserve for review his complaint on which the Court of Appeals reversed the conviction, we hold that the Court of Appeals erred. We reverse the judgment of the Court of Appeals and affirm the trial court's judgment.

MEYERS, J., did not participate.

KELLER, P.J., filed a concurring opinion, in which COCHRAN, J., joined.

HOLCOMB, J., filed a dissenting opinion, in which JOHNSON, J., joined.

KELLER, P.J., concurring joined by COCHRAN, J.

I join the Court's opinion but write separately to respond to some of the comments in the dissenting opinion. The dissent claims that a "first-year law student" would recognize that a *Brady* claim is presented by the statement, "Evidence establishing the defendant's innocence was withheld by a material prosecution witness." But *Brady* claims apply only to agents of the government,[1] and the complaining *witness* in this case was not a government agent. That distinction is the essence of the difference between suppression-of-exculpatory-evidence claims under *Brady v. Maryland*[2] and freestanding actual innocence claims due to the malfeasance of a witness under *Ex parte Elizondo*.[3]

The dissent next criticizes the Court for noting that the trial court did not mention *Brady* when it overruled the motion for new trial. The dissent claims that the Court's remarks are "disingenuous" because the Texas Rule of Appellate Procedure 21.8(b) does not permit the trial court to discuss or comment on the evidence.[4] But whether or not the trial court's comments were proper, those comments do indicate that the trial court was concerned with a newly discovered evidence claim rather than a *Brady* claim. Moreover, the rule prohibits commenting on the "evidence" but does not prohibit a trial court from specifying what claims it ruled upon. So there is no impropriety in this Court looking to the trial court's comments to try to ascertain whether the claim appellant now urges was before the trial court.

The dissent further contends that "there is no doubt the parties and the trial judge

---

1. *Strickler v. Greene*, 527 U.S. 263, 280–281, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); *see also Schlup v. Delo*, 513 U.S. 298, 313–314, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (discussing difference between freestanding innocence claims and procedural constitutional violations such as that found in *Brady v. Maryland*).

2. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

3. 947 S.W.2d 202 (Tex.Crim.App.1996).

4. Rule 21.8(b) provides in relevant part: "In ruling on a motion for new trial, the court must not summarize, discuss, or comment on evidence."

fully understood that a *Brady* claim was being litigated" because the "State filed a letter in the *appellate court* in which specific references to *Brady* were made" (emphasis mine). But the presence of a letter in the appellate court does not show that the trial court was on notice that a *Brady* claim was being urged. Since appellant raised a *Brady* claim in the court of appeals, a response to that claim would be expected.

The dissent says that the failure to cite *Brady* in the written motion for new trial or say the words *"Brady v. Maryland"* at the hearing should not override the fact that a *Brady* claim was apparent from the context and vigorously litigated by the parties. I agree that no talismanic formula was required. Appellant could have said the State had suppressed exculpatory evidence, or something similar. He never did. The dissent's conclusion that the *Brady* claim was "vigorously litigated" is without foundation. A newly discovered evidence claim was vigorously litigated, but there is no evidence in the record that a *Brady* claim was litigated at all.

HOLCOMB, J., filed a dissenting opinion, in which JOHNSON, J., joined.

A jury found appellant guilty of indecency with a child, found the enhancement paragraphs true, and assessed punishment at imprisonment for life and a $10,000 fine. On direct appeal, appellant argued that the trial court erred in denying his motion for new trial because (a) the complaining witness recanted her testimony shortly after trial on the merits and (b) the State did not disclose exculpatory evidence relating to that recantation. The Tenth Court of Appeals reversed, holding that the trial court abused its discretion because the recantation was credible. A majority of this Court reversed the judgment of the court of appeals and remanded the case to that court for resolution of appellant's *Brady* claim.[1] I dissented to the reversal, because, in my opinion, the court of appeals correctly concluded that the trial court abused its discretion in not granting the motion for new trial due to the newly discovered, material recantation evidence. On remand, the Tenth Court of Appeals again reversed the judgment of the trial court, holding that the State withheld material impeachment evidence. Today, the majority again reverses the judgment of the court of appeals. Because the record evidence clearly supports the court of appeals' holding that the State withheld material evidence, I again dissent.

I strongly disagree that appellant did not preserve error of his *Brady* claim. Texas Rule of Appellate Procedure 21.1 provides that a motion for new trial is a prerequisite to presenting a point of error on appeal when necessary to adduce facts not in the record. At the hearing on the motion for new trial, appellant adduced facts that *Brady* evidence was conveyed to the State and that *Brady* material was never conveyed to the defense. *See Harvey v. State*, 150 Tex.Crim. 332, 201 S.W.2d 42, 45 (1947) (op. on rehr'g) (appellant must provide reasonable notice to the trial judge and the State of errors that occurred or arose outside the trial proper). In appellant's first amended motion for new trial, he asserted that "Evidence establishing the defendant's innocence was withheld by a material prosecution witness." A first-year law student would recognize this to be a claim that *Brady* mate-

---

1. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

rial was not turned over to the defense prior to trial. *See id.* (finding appellant did not preserve error of jury misconduct complaint because the motion for new trial contained no allegation that jury misconduct occurred); *see also* TEX.R.APP. P. 21.3(e) (containing similar language). But more importantly, there is no doubt that the parties and the trial judge fully understood that a *Brady* claim was being litigated.[2] Indeed, the State even filed a letter in the appellate court in which specific references to *Brady* were made and arguing that the State is not required to turn over "evidence that is available equally to the defense and the prosecution" and "defendants must bear the responsibility for their failure to diligently seek its discovery." We have held that "No technical considerations or form of words" are required to preserve error for review. *Lankston v. State,* 827 S.W.2d 907 (Tex. Crim.App.1992) (straightforward communication in plain English will suffice if it lets the trial judge know what the party wants and why he thinks himself entitled to it); *see also Cofield v. State,* 891 S.W.2d 952, 954 (Tex.Crim.App.1994) ("Identifying challenged evidence as hearsay should generally be regarded as sufficiently specific objection."). We have held also that the State may not complain on appeal about the adequacy of a motion for new trial unless it lodged a complaint in the

trial court. *State v. Gonzalez,* 855 S.W.2d 692, 694–95 (Tex.Crim.App.1993). The State did not complain orally or by written motion that appellant's *Brady* claim was inadequate. *See id.*

It is clear that appellant preserved error. TEX.R.APP. P. 33.1(a)(1)(A) (to preserve error on appeal, party must object with sufficient specificity to make the trial court aware of the complaint). The fact that appellant did not cite to *Brady* in his written motion for new trial or say the words *Brady v. Maryland* at the hearing, should not override the fact that the specific grounds of his motion were apparent from the context and both parties vigorously litigated the *Brady* claim. *See Gallups v. State,* 151 S.W.3d 196, 198 n. 1 (Tex.Crim.App.2004) (holding that appellant preserved error of state law claim under TEX.CODE CRIM. PROC. ANN. art. 14.05(1), even though he did not mention art. 14.05 in his motion to suppress); TEX. R.APP. P. 33.1(a)(1)(A). The majority's holding that appellant did not preserve error of his *Brady* claim will effectively overrule a long line of cases from this Court and engraft a greater burden onto TEX.R.APP. P. 33.1(a)(1)(A).[3]

Because the majority holds that appellant did not preserve error, it does not examine whether *Brady* evidence was conveyed and withheld or whether the evidence was "material" for purposes of a

---

**2.** In further support of its holding that appellant did not preserve for review his *Brady* claim, the majority points to the trial court's order denying the motion for new trial. *See* ante, op. at 761 ("Also, the trial court's order denying the motion does not mention a *Brady* claim."). Our rules of appellate procedure, however, instruct that a trial court "must not summarize, discuss, or comment on evidence" in its ruling on a motion for new trial. TEX.R.APP. P. 21.8(b). It is rather disingenuous of the Court to look to the trial court's order, which improperly discusses and comments on the evidence, to support its conclu-

sion that "appellant did not raise a separate claim related to *Brady.*"

**3.** Because the record clearly reflects that appellant's *Brady* claim was preserved for review, I express no opinion upon the court of appeals' reasoning that *Brady* claims are unwaivable rights under *Marin v. State,* 851 S.W.2d 275, 278–79 (Tex.Crim.App.1993) (recognizing three categories of rights—(1) absolute requirements and prohibitions (unwaivable rights), (2) rights which must be implemented unless expressly waived, and (3) rights which are implemented upon request).

*Brady* claim. I would hold that the court of appeals did not err in concluding that *Brady* evidence was conveyed and withheld and that the evidence was material. *Keeter v. State*, 105 S.W.3d 137, 146–47 (Tex.App.-Waco 2003).

As the majority opinion explains, the complaining witness' father and step-mother both testified at the hearing on motion for new trial that they told the State before trial that, for a variety of reasons, they did not believe the complainant's accusations.[4] The prosecutor to whom this *Brady* material was allegedly relayed was at the hearing on the motion for new trial, but he did not controvert the two witnesses' assertions.[5] Additionally, the pros-

ecutor, through his cross-examination of the witnesses, did not challenge that the evidence was relayed to him before trial. Rather, the prosecutor cross-examined the witnesses about *when* the information was relayed (whether it was one month before trial, three months before trial, or "last year"), whether the father and step-mother's beliefs about appellant's innocence was consistent and continuous, and whether there were other opportunities before trial to *reassert* their beliefs to the State that the complainant was lying.[6] Thus, because the State did not challenge the allegations that *Brady* material was conveyed, I would hold that, even under a deferential review of the trial court's ruling,[7] the trial court

---

4. The complainant's father testified he told the District Attorney at least four months before trial that he did not believe his daughter and that the District Attorney was "accusing the wrong man." The step-mother testified that she told an assistant district attorney that she did not believe her step-daughter quite a while before trial. Specifically, she testified that she conveyed to the State her beliefs that complainant was lying "the first time we were to come down here and talk about the trial that we met with him so he could talk to [complainant]. I don't remember when it was, last year."

5. If the prosecutor disputed the witnesses' assertions that *Brady* information had been relayed, he should have asked to be sworn and then testified to the contrary, or otherwise disputed the witness' assertions in open court as an officer of the court, i.e.—that the *Brady* information had not been conveyed to him prior to trial. The prosecutor could have readily controverted the facts alleged by the father and the step-mother. Because he did not, I would hold that the court of appeals did not err in reversing the trial court's implicit finding that *Brady* information was withheld. *See Charles v. State*, 146 S.W.3d 204, 210 (Tex.Crim.App.2004) (citing to rule of civil procedure 166a (c) which provides that "summary judgment may be based on uncontroverted testimonial evidence of an interested witness ... if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could

have been readily controverted"); *see also, Brady*, 373 U.S. at 87, 83 S.Ct. 1194 ("Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly.").

6. Upon cross-examination of trial counsel, who had called herself as a witness to testify that the State never told her about the witness' doubts, the prosecutor asked, "If it didn't occur it wouldn't be disclosed; isn't that true?" This general question is not the equivalent of sworn testimony that the witnesses did not express their beliefs to the prosecutor before trial that the complainant was lying. *See Banks v. Dretke*, 540 U.S. 668, 675, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004) (finding significant to prosecutorial misconduct claim on habeas review that the prosecutor did not correct informant's untruthful testimony in open court when informant lied on the stand). The majority summarily concludes that the prosecutor did not know that appellant was making a *Brady* claim at the motion for new trial. *See* ante, op. at 760–61 ("Had the prosecutor been aware that the appellant was making a *Brady* claim, he could have testified to deny the allegation."). However, if the prosecutor did not know that a *Brady* claim was being made, there would be no reason for him to have asked defense counsel whether the *Brady* material had been conveyed at all.

7. *Charles v. State*, 146 S.W.3d at 210.

abused its discretion in denying appellant's motion for new trial. *See Banks v. Dretke,* 540 U.S. 668, 675–76, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004) ("When police or prosecutors conceal significant exculpatory or impeaching material in the State's possession, it is ordinarily incumbent on the State to set the record straight."); *see also* Tex.Code Crim. Proc. Ann. art. 201 ("It shall be the primary duty of the of all prosecuting attorneys ... not to convict, but to see that justice is done. *They shall not suppress facts or secret witnesses capable of establishing the innocence of the accused.*") (emphasis added).

Evidence is "material" if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *Thomas v. State,* 841 S.W.2d 399, 404 (1992). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Bagley,* 473 U.S. at 682, 105 S.Ct. 3375. *Brady* evidence includes impeachment evidence as well as exculpatory evidence. *See id.* at 676, 105 S.Ct. 3375.

I agree with the court of appeals that the evidence in question was material impeachment evidence because "Travis's and Rhonda's testimony had, by far, the highest potential to discredit [complainant's allegations]." *Keeter v. State,* 105 S.W.3d at 146. Had appellant been apprised of the witness' beliefs, the result of the proceeding might well have been different. *See Ex parte Richardson,* 70 S.W.3d 865, 871 (Tex.Crim.App.2002).

First, the father and the step-mother had no motive to testify against the complainant in a prosecution of a non-relative charged with molestation. Likewise, that a father would have testified *in favor* of a man accused of molesting his daughter would have been powerful evidence to the jury. And, evidence that a father, who had no ties to the defendant, would claim that the District Attorney had the wrong man is equally compelling evidence. Second, because the complainant had lived with the father and step-mother for almost a year prior to the trial, they had personal knowledge of the complainant's propensity to lie, which surely would have been admitted upon cross-examination. *See Keeter,* 105 S.W.3d at 147 (noting that the witness' testimony would be admissible under rules of evidence 608 and 613). In sum, a parent and step-parent would not testify favorably for an accused person charged with molesting their daughter, if those persons, with personal knowledge of the complainant's behavior, did not believe that the accused was innocent.

Thus, because in my view, the State withheld material impeachment and exculpatory evidence, I would hold that the jury's verdict is not worthy of confidence. *See Kyles v. Whitley,* 514 U.S. at 434, 115 S.Ct. 1555; *Bagley,* 473 U.S. at 682, 105 S.Ct. 3375; *Cook v. State,* 940 S.W.2d 623, 627 (Tex.Crim.App.1997). Because the trial court had clear notice that a *Brady* claim was being litigated, and the record evidence clearly supports the court of appeals' conclusion that material *Brady* evidence was withheld, I dissent.