NO. 07-06-0036-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JANUARY 15, 2008
_____

EDWARD ANTHONY LUNA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 31ST DISTRICT COURT OF WHEELER COUNTY;

NO. 4118; HONORABLE STEVEN EMMERT, JUDGE
_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant Edward Anthony Luna brings this appeal from his conviction for evading arrest or detention and punishment of fourteen months confinement in a state jail facility and fine of $2,500.00. He presents two points, challenging the admission of extraneous offense evidence and the factual sufficiency of the evidence supporting his conviction. We affirm.

The indictment against appellant alleged he used a vehicle to intentionally flee from Brady Bishop, who appellant knew was a peace officer attempting to lawfully arrest or

detain him.[1] Appellant pled not guilty and the case was tried to a jury. The jury heard two different versions of events. The State's version was presented primarily through its sole witness, police officer Brady Bishop. On the evening of appellant's arrest Bishop was on Main Street in Shamrock, Texas, conducting a traffic stop when he heard a car "peeling out" and looked west to see a car at a stop sign.[2] Although it was after 11 p.m. Bishop noted the car's headlights were off. Bishop recognized the driver as appellant. Appellant turned north onto Main Street toward Bishop who attempted to get appellant to stop by directing him with a flashlight, gesturing, and yelling. When appellant did not stop Bishop got into his patrol car to pursue. Appellant continued north one block before he turned west, then south onto Wall Street, and stopped at his home. Bishop said appellant made insulting and provocative comments as he went into the house. After a second officer arrived the two officers arrested appellant in his house.

The following day Bishop investigated damage to a yield sign at the intersection of 9th Street and Wall Street. Apparently based on the presence of damage to appellant's car and having seen the car at the intersection the night before, Bishop concluded appellant's car had struck the sign. No damage to the yield sign is shown in the photographs introduced at trial.

Bishop also had a conversation with appellant four days after the charged offense. This conversation took place in Bishop's patrol car and was recorded on equipment

---

[1] *See* Tex. Penal Code Ann. § 38.04 (a), (b)(1) (Vernon 2003).

[2] The record shows Main Street runs North and South and Wall Street is one block to the West and parallel with Main Street.

mounted in the car. In the recording, admitted without objection, appellant explained he drove away from Bishop because he did not have a driver's license and feared he would receive a citation. He also apologized for things he said to Bishop on the night of his arrest.

Appellant presented his version of events through his testimony and that of his wife Robin Luna and Jennifer Reynolds. According to appellant, he and a friend planned to drive from his home at 811 Wall Street to a convenience store on Main Street a block away. On seeing Bishop, appellant made a U-turn, striking the yield sign in the process. Appellant returned to his house without ever driving onto Main Street or seeing Bishop make any effort to stop him. Appellant also denied Bishop ever pursued him or that Bishop was present when appellant went into his house. Appellant admitted to the subsequent recorded conversation with Bishop but explained his apology was for statements he made while being taken to jail and not before his arrest. Robin Luna, appellant's estranged wife, testified at the time of the occurrence in question she heard "the squealing of tires," looked outside the house, and saw appellant turning. She then saw his car was "hung up on the yield sign on the corner." She did not "believe" appellant reached Main Street before returning home. Luna did not see the police when appellant reached their house and believed twenty-five to thirty minutes passed before the police arrived. But in later testimony she was not so sure of the time lapse. Luna agreed on cross examination she did not want to see appellant go to jail. Jennifer Reynolds testified that Robin Luna was babysitting her child that evening and police were at appellant's house when she went to retrieve her child.

3

Appellant acknowledged he had difficulty remembering the events of the night in question. At trial, he testified of recalling "seventy-five percent" of the occurrence. In his recorded conversation with Bishop, appellant commented he had "no earthly idea" what happened during the occurrence in question. Also, on the recorded conversation, when Bishop told appellant he was behind him, appellant replied, "See, I didn't know." Concerning hitting the yield sign with his car, appellant stated in the recorded conversation, "I was lookin' behind me to see if you were comin'." Appellant testified on the night in question he consumed whiskey and he "get[s] crazy" after drinking whiskey. Appellant also testified on the night in question "I wasn't out for no trouble," but in the recorded conversation he said that he was looking for trouble.

Appellant's first point assigns error to prosecution questions about prior instances when police had used pepper spray on him. He contends the evidence was presented for the purpose of showing appellant's character trait of disregarding directions by police, in violation of Rule of Evidence 404(a). We agree with the State the complaint was not preserved for review.

Preservation of most complaints for appellate review requires a timely, specific objection to the trial court. Tex. R. App. P. 33.1(a). Challenges to evidentiary rulings must be preserved or they are forfeited. *Marin v. State*, 851 S.W.2d 275, 278 (Tex.Crim.App. 1993). "All a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Keeter v. State*, 175 S.W.3d 756, 760 (Tex.Crim.App. 2005).

4

The defense presented no objection to the prosecutor's question to appellant about whether he like being sprayed with pepper spray or the response that he had been sprayed three times. The prosecutor questioned appellant about each of those specific instances over three pages of the record before appellant raised an objection to the relevance of the evidence. The objection was untimely and failed to preserve the complaint for our review. We overrule appellant's first point.

In his second point, appellant challenges the factual sufficiency of the evidence supporting his conviction. Evidence supporting guilt, though legally sufficient, may be factually insufficient because it is so weak that the jury's verdict seems clearly wrong and manifestly unjust, or because evidence contrary to the verdict is such that the jury's verdict is against the great weight and preponderance of the evidence. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006); *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex.Crim.App. 2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000). In a factual sufficiency review, we consider all the evidence, in a neutral light. *Marshall*, 210 S.W.3d at 625; *Watson*, 204 S.W.3d at 414. Although an appellate court's authority to review factual sufficiency permits the court to disagree with the fact finder's determinations, the appellate court must accord them due deference, particularly those determinations concerning the weight and credibility of the evidence. *Johnson*, 23 S.W.3d at 9. When there is a conflict in the evidence, we may not find the evidence factually insufficient simply because we might disagree with the jury's resolution of the conflict. Rather, we must first be able to say, with some objective basis in the record, that the great weight and preponderance of all the evidence contradicts the jury's verdict. *Watson*, 204 S.W.3d at

5

417.  We must also discuss the evidence that, according to the appellant, most undermines the jury's verdict.  *Sims v. State,* 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

Here, appellant's complaint is not merely that the jury's decision to believe Bishop over the defense witnesses was clearly wrong.  He points to perceived inconsistencies in Bishop's testimony, both internally and with the physical evidence.

Appellant challenges Bishop's testimony as inconsistent with the physical evidence shown by the photographs of the yield sign and tire marks in State's exhibits 1 and 2.  Both parties took the position the marks shown in the photographs were made by appellant's car.  In appellant's view, the photographs support only his version of events because they show a distinct tire track perpendicular to the curb which, he contends, would only be made by car which was turning around.  Even if that is true,[3] this evidence would be inconsistent with Bishop's testimony only if the jury believed the defense evidence concerning his direction of travel before the turn.  It appears the photograph was taken after the yield sign was repaired, preventing any conclusion concerning the direction of the turn based on the damage.  Moreover, the orientation of the photograph was not established.  The testimony does not show which corner of the intersection of Wall Street and 9th Street had the yield sign, establishing the location of the tire marks in relation to other events.

Appellant also argues Bishop's testimony was inconsistent because he testified the events occurred over a period of fifteen to thirty minutes, but the pursuit of appellant lasted

---

[3] The mark being perpendicular to the curb would be consistent with a driver making a three-point turn in the road, not the "U-turn" described by appellant.

6

no more than five minutes and Bishop "simply could not account for the rest of the time."

We disagree. Bishop's testimony distinguished the brief time spent on the pursuit from the

total time between his first sight of appellant and the arrest.

> Q: [F]rom the time you heard squealing to the time that you got him out of the house, took how long?

> A: I'm not sure.

> Q: Roughly estimate, five minutes?

> A: No, 20 minutes maybe.

> Q: 20 minutes. So you waited out there on your backup for a long time?

> A: No. From the time it started until the time its over I'm guesstimating about 20 minutes.

> Q: He went three blocks and it took him 20 minutes?

> A: No, Sir. You said from the time it started until the time I got him out of the house.

From this testimony, the jury could have inferred that the time appellant describes as

unaccounted-for was the period Bishop waited outside appellant's house for another officer

to arrive as backup.

Having reviewed the entire record, we find it does not support a conclusion the jury's

verdict was against the great weight and preponderance of the evidence or that the

evidence of guilt was so weak as to make the verdict clearly wrong and manifestly unjust. We overrule appellant's second point of error. Finding no reversible error in the trial court's judgment, we affirm.

James T. Campbell
Justice

Do not publish.