# NO. 12-17-00374-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CHARLES WILLIAM NICHOLS,* *APPELLANT* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Appellant, Charles William Nichols, appeals from his conviction for driving while intoxicated. In two issues, he challenges the sufficiency of the evidence and the denial of his motion for new trial. We affirm.

### BACKGROUND

The State charged Appellant with driving while intoxicated, with an alcohol concentration level of 0.15 or more. Appellant pleaded "not guilty" and the case proceeded to a jury trial.

At trial, the State presented evidence that officers with the Palestine Police Department often conduct "walk-throughs" at certain clubs or bars to try and deter crimes, such as driving while intoxicated. On March 27, 2016, officers arrested Appellant at the Shelton Gin for public intoxication. According to Officer Zachary Smith, Appellant was stumbling and swaying while inside the Shelton Gin. As Appellant left the Gin, he passed by Smith, who noticed Appellant's glassy, red eyes. Officer Brandon Nicholson testified that Appellant hugged the bouncer as he left the Shelton Gin, "hung on the bouncer longer than normal," and swayed as he walked.

Smith explained that officers did not immediately stop Appellant as he left the Shelton Gin because he might have been getting a ride, retrieving cigarettes, or making a phone call. Officers followed Appellant outside and Nicholson saw Appellant approach an SUV, open the door, and

sit in the driver's seat. He heard Appellant crank the vehicle. Smith testified that he knew Appellant was attempting to leave because the engine was running and he saw the reverse lights illuminate. Nicholson and Officer Aston Rodriguez confirmed that the reverse lights illuminated. Rodriguez further testified that the vehicle shifted as if being placed in park when officers asked Appellant to exit the vehicle. Recordings from the officers' body cameras show the vehicle's lights illuminating and include the sounds of an engine being started. Additionally, Smith testified that when he later viewed the body camera footage, he saw Appellant manipulating the steering column and gear shift.

Once Smith made contact with Appellant and Appellant exited the vehicle, Smith noticed that Appellant was unsteady on his feet and had slurred speech. Nicholson added that Appellant's eyes were glassy and he produced his concealed handgun license when asked for his driver's license. Smith, Nicholson, Corporal Jason Lewis, and Officer Nathan Perkins testified that Appellant smelled of alcohol. Nicholson described Appellant as belligerent and irritated. Rodriguez testified that Appellant slurred his words and his statements made no sense. When Appellant refused to participate in field sobriety tests, officers arrested him. Lewis admitted that Appellant turned and placed his hands behind his back without resisting. Appellant subsequently declined to consent to a blood draw.

Hal Ham, a patron of the Shelton Gin, testified that there was no walk-through on March 27, as the officers entered single file and never left the podium by the front door. As Appellant exited the establishment, he saw one of the officers nod his head at another officer and thought, "Man, that don't seem right." Ham testified that there was hardly anyone at the Shelton Gin that night. He followed the officers outside and asked Officer Nicholson if he needed to give Appellant a ride home. Ham believed that Nicholson replied, "Not at this point." He initially admitted that when he asked Appellant if he needed a ride, Appellant pointed to the patrol vehicle and stated, "I've got a ride right there," but Ham explained that Appellant was actually referring to him as his ride. Ham had the impression that officers were taking Appellant to jail because of his attitude and statements he made to the officers.

Nicholson testified that Appellant was initially charged with public intoxication, but the charge was later changed to driving while intoxicated because body camera footage revealed that Appellant placed the vehicle in reverse and looked back as though preparing to back out of the

2

parking lot. Smith explained that body camera footage showed the vehicle move and Appellant manipulate the vehicle.

Officers subsequently obtained a warrant for Appellant's blood. Karen Shumate, a chemist with the Texas Department of Public Safety Crime Laboratory, testified that Appellant's blood test yielded results of 0.168 grams of alcohol for one-hundred milliliters of blood.

Appellant testified that on the night of the offense, he and his family ate dinner at the Pint & Barrel and that he drank probably four pint size beers with dinner. Afterwards, he went to the Shelton Gin, which the record indicates is near the Pint & Barrel. He testified that he did not intend to drive home that night and that his brother agreed to pick him up when Appellant called. Appellant's brother testified at trial and confirmed this agreement. Appellant testified that he went to his car to call his brother. He admitted cranking the vehicle and placing it in gear, but denied any intent to drive away. He explained that the parking lot was empty, so he planned to back out slightly and park under a gaslight to wait for his brother. He testified that the font on his phone was too small and indicated that he needed the light inside his vehicle and his reading glasses to be able to make the phone call. He believed that officers followed him outside for the sole purpose of arresting him, but he admitted that when officers asked if anyone could come pick him up, he replied "no" and never mentioned his brother coming to pick him up. Appellant felt that officers would take him to jail regardless. He admitted that Ham offered to drive him home, but that "it wasn't going to happen."

At the conclusion of trial, the jury found Appellant "guilty" of driving while intoxicated. The trial court assessed punishment at confinement for three-hundred sixty-five days in county jail, but suspended imposition of sentence and placed Appellant on community supervision for twelve months. This appeal followed.

SUFFICIENCY OF THE EVIDENCE

In his first issue, Appellant contends the evidence is insufficient to support the jury's verdict finding him "guilty" of driving while intoxicated. According to Appellant, the record lacks evidence demonstrating his operation of a motor vehicle at the time of his arrest.

**Standard of Review and Applicable Law**

In Texas, the *Jackson v. Virginia* legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each

element of a criminal offense that the State is required to prove beyond a reasonable doubt. ***Brooks v. State***, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See **Jackson v. Virginia***, 443 U.S. 307, 316–17, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See **id.***, 443 U.S. at 319, 99 S. Ct. at 2789. The evidence is examined in the light most favorable to the verdict. ***Id***. A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See **Tibbs v. Florida***, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982). This familiar standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts. *See **Jackson***, 443 U.S. at 319, 99 S. Ct. at 2789.

Under this standard, we may not sit as a thirteenth juror and substitute our judgment for that of the fact finder by reevaluating the weight and credibility of the evidence. *See **Dewberry v. State***, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see also **Brooks***, 323 S.W.3d at 899. Instead, we defer to the fact finder's resolution of conflicting evidence unless the resolution is not rational. *See **Brooks***, 323 S.W.3d at 899–900. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. ***Clayton v. State***, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are treated equally. ***Id***. Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. ***Hooper v. State***, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The duty of a reviewing court is to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime charged. *See **Williams v. State***, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge. *See **Malik v. State***, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." ***Id***.

"A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place." TEX. PENAL CODE ANN. § 49.04(a) (West Supp. 2017). "If it is shown on the trial of an offense under [Section 49.04] that an analysis of a specimen of the person's blood, breath, or urine showed an alcohol concentration level of 0.15 or more at the time the analysis was performed, the offense is a Class A misdemeanor." *Id*. § 49.04(d).

**Analysis**

For purposes of DWI, a defendant "operates" a vehicle when the totality of the circumstances demonstrates "that the defendant took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use." *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995). In other words, "operation does not necessarily involve driving," and a DWI conviction may stand even when the evidence fails to prove the defendant was actively engaged in driving the vehicle. *See id*. at 389-90. "Texas juries have rendered guilty verdicts even when the evidence showed that the operator did not successfully make the vehicle 'go.'" *Kirsch v. State*, 357 S.W.3d 645, 650 (Tex. Crim. App. 2012).

In *Denton*, the appellant challenged his unauthorized use of a motor vehicle conviction on grounds that he did not operate the complainant's vehicle because, although he started the engine, the vehicle was never moved from a stationary position. *Denton*, 911 S.W.2d at 388. The court of criminal appeals disagreed, holding that the appellant took action to affect the functioning of the vehicle in a manner that would enable the vehicle's use by starting the ignition and revving the accelerator of the complainant's vehicle. *Id*. at 390. In the present case, the jury heard evidence comparable to that in *Denton*. Both the body camera footage and the testimony demonstrates that Appellant started the engine and the vehicle's reverse lights illuminated. Smith testified that his body camera footage revealed Appellant manipulating the steering column and gear shift. The record also contains evidence that Appellant looked back as though preparing to back out and the vehicle shifted as if being placed in park after officers contacted Appellant. Although the jury heard Appellant testify that he did not intend to drive home, Appellant admitted cranking the vehicle, placing it in gear, and planning to back out slightly and park under a gaslight.

Accordingly, based on this evidence, the jury could reasonably conclude that Appellant took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use. *See id*.; *see also Molina v. State*, No. 07-09-00022-CR, 2010 WL 980560, at *2 (Tex. App.—Amarillo Mar. 18, 2010, pet. ref'd) (mem. op., not designated for publication) (in DWI case,

5

running vehicle, flickering brake lights, and activated radio were indications that appellant took actions that affected the functioning of the vehicle and, thus, was operating the vehicle before falling asleep). Viewing the evidence in the light most favorable to the State, we conclude that the jury was rationally justified in finding, beyond a reasonable doubt, that Appellant was intoxicated while operating a motor vehicle in a public place. *See* TEX. PENAL CODE ANN. § 49.04(a); *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. Because the evidence is sufficient to support Appellant's conviction, we overrule issue one.

## MOTION FOR NEW TRIAL

In issue two, Appellant challenges the denial of his motion for new trial. He maintains that the motion presented substantial newly discovered evidence that supported his defensive theory that Shelton Gin employees colluded with the Palestine Police Department to target Appellant in "retaliation for some slight[.]"

## Standard of Review and Applicable Law

Motions for new trial based on grounds of newly discovered evidence are not favored by courts. *Drew v. State*, 743 S.W.2d 207, 225 (Tex. Crim. App. 1987). Texas Code of Criminal Procedure Article 40.001 provides that "[a] new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." TEX. CODE CRIM. PROC. ANN. art. 40.001 (West 2018). To be entitled to a new trial on the basis of newly discovered or newly available evidence, the defendant must meet the following four-part test: (1) the new evidence must have been unknown or unavailable to him at the time of trial; (2) his failure to discover or to obtain the evidence was not due to his lack of diligence; (3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result at another trial. *Carsner v. State*, 444 S.W.3d 1, 2–3 (Tex. Crim. App. 2014). The failure of the movant to establish any one of the requirements for a new trial based on newly discovered evidence supports the trial court's denial of the motion. *Jones v. State*, 234 S.W.3d 151, 157 (Tex. App.—San Antonio 2007, no pet.).

We review a trial court's denial of a motion for new trial for abuse of discretion. *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014). A trial court abuses its discretion by denying a motion for new trial when no reasonable view of the record could support its ruling. *Id*. We view the evidence in the light most favorable to the trial court's ruling and presume that all

reasonable factual findings that could have been made against the losing party were made against that losing party. *Id*.

**Hearing on Motion for New Trial**

In his motion for new trial, Appellant stated that, after trial, he "made further inquiries into possible malfeasance on the part of Shelton's Gin and the Palestine Police officers in relation to [his] arrest[.]" Appellant maintained that (1) he was likely the subject of retaliation, (2) the presence and absence of meta-data of the body cameras suggested selective operation, (3) officers are issued department cell phones, (4) there was communication evidence that should have been surrendered under the Michael Morton Act, (5) police department operating protocols were amended because of his arrest and trial, suggesting that prior operations were unfair, illegal, or unethical, (6) there may be surveillance video inside the Shelton Gin to support collusion with the officers, and (7) he desired to investigate J&B Security, LLC and subpoena information regarding Shelton Gin surveillance. Appellant alleged that he was the "target of a Shelton's Gin / police officers' action which resulted in an entrapment for retaliation, resulting in a driving while intoxicated arrest."[1]

At a hearing on Appellant's motion, Ham testified that the Shelton Gin has a video surveillance system that "everybody can see" and that it would show the "whole scenario." He believed the surveillance video would be influential and beneficial for Appellant. The Shelton Gin's bouncer, Samuel Bennett, confirmed the presence of surveillance at the Gin and testified that the surveillance cameras are visible. Stuart Whitaker, who works at the Shelton Gin, likewise testified that he is aware of the Shelton Gin's surveillance system.

Bennett and Ham both testified that normally two to four officers conduct the walk-through and that the usual amount of officers were present on March 27. Bennett testified that the Shelton Gin's owner has a direct number to a particular officer should a disturbance occur, but there was no disturbance on March 27. Bennett also has the number for an officer who told him to call if he had any problems. He denied ever being discouraged from placing a public call for fear of the Texas Alcoholic Beverage Commission. Bennett testified that bartenders sometimes call the police, but he was unaware of any calls to arrest someone who was not intoxicated. He also

---

[1] The record does not reflect that Appellant mentioned or argued a violation of the Michael Morton Act during the hearing on his motion for new trial. Nor does he raise the issue on appeal. *See* TEX. R. APP. P. 38.1(i) (requiring appellant's brief to contain clear and concise argument for contentions made).

7

testified that officers usually ask him to unlock the back gate when they need to arrest someone, but they did not make this request on March 27, and that arrests are usually immediate.

Ham believed Appellant's arrest was a "setup." On March 27, he noticed the officers standing by the check-in counter rather than conducting the walk-through. Whitaker testified that officers did not watch Appellant exclusively when they first arrived and that Appellant did nothing to alert them to him. Bennett believed officers were present for something specific, such as making an arrest, and he guessed Appellant was "the one in question." He did not believe Appellant did anything to be a target.

Chief Andy Hartman with the Palestine Police Department testified that officers should always activate their body cameras anytime there is an encounter with someone or they are conducting a walk-through of a drinking establishment. He testified that it is possible officers used their private cell phones on March 27 because they did not have department issued phones at the time. He explained that officers no longer conduct walk-throughs at the Shelton Gin because the practice made him uncomfortable, so he suspended it pending further review. Hartman expressed concern over officer and public safety, as well as image and perception, and stated his belief that walk-throughs portray a "mission image" and it is not good practice to be in a bar unless there is reason to be there.

Corporal Lewis testified that officers had no agreement to work security for the Shelton Gin and he denied any type of agreement with the Shelton Gin to target and pursue Appellant. He testified that officers did not have department issued cell phones at the time of the offense and that none of the officers used their personal cell phones that night. He admitted that he did not know the other officers' thought processes or what they were doing at the Shelton Gin before his arrival. He believed that the policy at the time required officers to activate their body cameras anytime they initiated contact with a citizen. He testified that officers are supposed to notify dispatch when they leave their patrol cruiser and that it would be a conflict for an officer to inform dispatch that he was about to conduct a walk-through when he was actually leaving the Shelton Gin. He testified that the dispatch recording indicated that approximately seven minutes transpired between officers' arriving to conduct the walk-through and running Appellant's license plate.

At the conclusion of the testimony, Appellant's counsel argued that new, discoverable evidence existed that was not known or offered at trial regarding (1) a video, and (2) Lewis's testimony that the events of March 27 occurred in a span of seven minutes, which counsel stated

8

was "unreasonable based on common sense." Counsel stated that the video should have been produced by the State if available, thus, Appellant did not have the burden to subpoena or procure the video. He also argued that the testimony showed that Appellant was targeted. Counsel explained that the events of March 27 could not have occurred within seven minutes, officers' notifications to dispatch were deceptive, and it appeared to be possible entrapment, in that officers waited for Appellant to enter his vehicle to arrest him for driving while intoxicated. When asked whether the video from the Shelton Gin was available, counsel replied, "Well, that would be the evidence that we would like to discover." Counsel explained:

> …it escalated from an individual citizen to a possible public intoxication. It should have ended there, but they allowed him to get into his car where they had … as you have seen on the video, they were walking slowly behind him, could have caught up with him and arrested him for [public intoxication] prior to him getting into his car. But they allowed him to get into his car and crank it, and as you heard one officer say, "We should have let him back out so we could get him for a DWI."

According to counsel, the purpose of asking for a new trial was to investigate further, including the reasons why Appellant was targeted. Counsel identified points of investigation, such as officers' personal cell phones, and whether anyone contacted officers or bartenders made gestures to officers that night. He explained that officers were at the Shelton Gin for thirty minutes or more, but the dispatch notifications came in after midnight. He also identified a "possible barmaid" who may have taken offense with Appellant, noting that she would have called one or more officers to come arrest Appellant, and officers had sufficient time to stop Appellant before he entered his vehicle. At the conclusion of the hearing, the trial court denied Appellant's motion for a new trial.

**Analysis**

On appeal, Appellant contends that he presented (1) "significant evidence that would have impeached the trial testimony of law enforcement witnesses and supported the defense's theory that Shelton's Gin employees were colluding with Palestine police officers to target [Appellant] in retaliation for some slight, resulting in his DWI arrest;" and (2) "compelling new evidence…that had not been produced to him prior to trial, evidence that was not readily available to him through the exercise of due diligence, evidence that – if used effectively in a new trial – could result in a different outcome."

We first note that the record does not reflect that Appellant presented the surveillance recordings to the trial court for review or showed that such recordings still exist. Moreover, the

9

evidence at the hearing on Appellant's motion does not demonstrate Appellant's unawareness of the surveillance cameras at the Shelton Gin or that the surveillance recordings would have been unavailable to him before trial. *See Ex parte Brown*, 205 S.W.3d 538, 545 (Tex. Crim. App. 2006) ("'newly discovered evidence' refers to evidence that was not known to the applicant at the time of trial and could not be known to him even with the exercise of due diligence"). Nor does the record indicate that Appellant could not have obtained the dispatch recordings or asked any of the officers at trial about the length of time during which the pertinent events transpired.[2] *See id*.

Most importantly, we cannot conclude that the "new" evidence identified by Appellant would yield a different result at another trial. *See Drew*, 743 S.W.2d at 228. At the hearing on his motion for new trial, Appellant offered mere speculation as to whether officers colluded with Shelton Gin employees and whether evidence of such collusion even existed. Moreover, as previously discussed, the jury heard sufficient evidence to support its conclusion that Appellant was intoxicated while operating a motor vehicle in a public place. *See* TEX. PENAL CODE ANN. § 49.04(a). The State presented evidence that Appellant was unsteady on his feet, had red and glassy eyes, smelled of alcohol, and had slurred speech. Appellant admitted drinking that night and his blood test confirmed intoxication. The jury heard evidence that Appellant cranked his vehicle, the reverse lights illuminated, the vehicle shifted, Appellant manipulated the steering column and gear shift, and Appellant intended to back out. The jury also had the opportunity to review recordings from the officers' body cameras.

Additionally, the jury did hear testimony that called the officers' intentions into question. Namely, Ham testified that officers did not actually conduct the walk-through and that something did not seem right when the officers reacted to Appellant as he left the Shelton Gin. The jury also heard Ham opine that officers arrested Appellant because of his statements and attitude. Appellant also expressed his belief that officers followed him outside for the sole purpose of arresting him

---

[2] Regarding the dispatch records, Appellant complains these were not produced in pretrial discovery and had to be obtained via an open records request directed to the City of Palestine. Appellant cites to *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), but presents no *Brady* analysis in his brief. *See* TEX. R. APP. P. 38.1(i). Most importantly, the record of the motion for new trial and hearing thereon does not reveal that Appellant asserted a *Brady* violation or attempted to establish the elements of such a claim. *See Keeter v. State*, 175 S.W.3d 756, 760 (Tex. Crim. App. 2005) ("And a *Brady* claim requires that the defendant show by a preponderance of the evidence that evidence was withheld, that it was favorable to the defense, and that the evidence was material"). Because of the nature of Appellant's complaint—that the trial court erred in denying his motion for new trial—he must have raised the *Brady* complaint at some point during the motion for new trial proceedings to preserve his complaint for appellate review. *See id.* at 759-60. As the court of criminal appeals explained, "The trial court cannot be said to have erred in denying a motion for new trial on a basis that was not presented to it." *Id*. at 760.

and that he would be arrested no matter what.  Despite hearing this evidence, the jury still found Appellant "guilty" of driving while intoxicated and, in doing so, apparently rejected any evidence suggesting that Appellant was arrested for some other reason than commission of an offense.  *See Clayton*, 235 S.W.3d at 779 ("guilty" verdict demonstrated jury's rejection of defendant's exculpatory explanation); *see also **Zuliani v. State***, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003) ("guilty" verdict is an implicit finding rejecting defensive theory).

Accordingly, we conclude that the trial court could have reasonably determined that the strength of the State's case was such that the new evidence identified by Appellant, even if true, was not compelling enough to probably bring about a different result in a new trial.  *See **Wallace v. State***, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003); *see also **Burdick v. State***, 474 S.W.3d 17, 23 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (holding there was no reasonable probability that newly discovered evidence impeaching officer's history of professionalism would have changed jury's assessment of appellant's intoxication).  Viewing the evidence in the light most favorable to the trial court's ruling, we hold that the trial court did not abuse its discretion by denying Appellant's motion for new trial.  *See **Colyer***, 428 S.W.3d at 122.  We overrule issue two.

## DISPOSITION

Having overruled Appellant's two issues, we ***affirm*** the trial court's judgment.

**GREG NEELEY**
Justice

Opinion delivered October 17, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### OCTOBER 17, 2018

### NO. 12-17-00374-CR

**CHARLES WILLIAM NICHOLS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the County Court at Law

of Anderson County, Texas (Tr.Ct.No. 63409)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*