NUMBER 13-10-00409-CR

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT OF TEXAS

 

                                  CORPUS CHRISTI -
EDINBURG

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



HOWARD O’BRYAN,                                                                    Appellant,

 

v.

 

THE STATE OF TEXAS,                                                                
Appellee.

 

 



On appeal from the 19th District
Court

of McLennan County, Texas.

 

 



 MEMORANDUM OPINION

 

Before Chief Justice Valdez and
Justices Rodriguez and Benavides

Memorandum Opinion by Chief Justice
Valdez

            Appellant, Howard O’Bryan, entered an
open plea of guilty to two counts of aggravated sexual assault of a child with
a deadly weapon, see Tex. Penal
Code Ann. § 22.021 (Vernon Supp. 2010), and two counts of indecency
with a child.  See id. § 21.11 (Vernon Supp. 2010).[1]  The trial court
sentenced O’Bryan to life imprisonment for each count of aggravated assault. 
For each count of indecency with a child, the trial court imposed a sentence of
twenty years’ confinement.  The trial court ordered all four sentences to run
consecutively.  By six issues, O’Bryan contends that:  (1) his guilty pleas
were not knowing and voluntary (issues one and two); (2) the trial court failed
to comply with article 26.13 of the Texas Code of Criminal Procedure, see
Tex. Code Crim. Proc. Ann. art.
26.13 (Vernon Supp. 2010); (3) the trial court erred by not conducting a
hearing on his motion for new trial; (4) the trial court improperly ordered him
to pay fees relating to his court-appointed attorney and investigator because
he is indigent; and (5) the trial court erred in signing four separate orders
for funds to be withdrawn from his inmate-trust-fund account.  We affirm the
judgment in part and reverse and remand in part.

I.          Background

            On June 8, 2010, O’Bryan entered an open plea of guilty to two counts of
aggravated sexual assault of a child with a deadly weapon and two counts of
indecency with a child.  The State presented, among other things, O’Bryan’s
judicial confession and a report written by Robin Mayfield, R.N., a sexual
assault nurse examiner.

Mayfield documented that she interviewed O’Bryan’s twelve-year-old biological daughter, B.B.S. 
According to the report, B.B.S. stated that when she went to O’Bryan’s bedroom,
he closed the door, locked it, and threw her on the bed.  B.B.S. told Mayfield
that she fought with O’Bryan, but he managed to take off her clothes, threw her
against the wall, picked her up, and threw her in the closet.  B.B.S. claimed
that O’Bryan then “raped” her by “putting his middle” inside her “middle
part.”  Mayfield documented that B.B.S. identified on a diagram the penis as a
male’s middle part and the vagina as a female’s middle part.

B.B.S. told Mayfield that
after O’Bryan raped her, he grabbed a knife and told her that they were both
“going to die.”  B.B.S. claimed that O’Bryan put the knife on her neck and when
she attempted to defend herself, he cut her neck and fingers and “poked her
stomach” with the knife.  B.B.S. stated that O’Bryan warned her not to tell
anyone what had happened and that she should say that her uncle “touched” her. 
B.B.S. claimed that O’Bryan then told B.B.S.’s grandmother that B.B.S’s uncle
was a pervert and “was going to be in trouble.”

Mayfield documented that
B.B.S. had several injuries including the following:

3
cuts with three stitches each on thumb [and] index finger.  4cm cut to wrist. 
1.5cm cut on index finger (in addition to cut with sutures).  Red petechia
bruising on neck.  1.5 open oozing cut on neck.  1 cm cut on chest.  Red, blue,
purple, brown, [and] green bruised areas [and] red abrasions on legs.  Tender
area on back.

 

Mayfield also noted that she acquired vaginal
swabs from B.B.S.  DNA reports from the Texas Department of Public Safety’s
crime laboratory were admitted into evidence.  The reports showed that sperm
was detected on B.B.S.’s vaginal swabs and that “the DNA profile from the sperm
fraction of [B.B.S’s vaginal swab] is consistent with a mixture of the victim
and [O’Bryan]. . . .”

The trial court accepted O’Bryan’s guilty pleas to all
four counts.  B.B.S., among others, then testified at the punishment phase of
O’Bryan’s trial.  After hearing the evidence, the trial court sentenced O’Bryan
to two life sentences for each count of aggravated sexual assault of a child
with a deadly weapon and twenty years’ imprisonment for each count of indecency
with a child.  The trial court ordered that the sentences be cumulated.  This
appeal ensued.

II.         Voluntariness of Guilty Plea

            By his first issue, O’Bryan contends
that his plea was involuntary and in violation of his due process rights
because:  (1) the trial court did not admonish him of the possibility that his
sentences could be cumulated; (2) the trial court did not advise him that the
minimum punishment for aggravated sexual assault of a child with a deadly weapon
was twenty-five years until after the venire had seen him in his “jail clothes”;
and (3) “the trial court improperly forced him to ‘acknowledge his guilt’ in
order to accept the guilty pleas.”  By his second issue, O’Bryan contends that
his plea was involuntary in violation of the Texas Constitution’s Due Course of
Law Clause.  See Tex. Const.
art. I, § 13.

A.        Standard of Review and Applicable Law

            It is a violation of due process of
law for a trial court to accept a defendant's guilty plea without an
affirmative showing “spread on the record” that the guilty plea is “intelligent
and voluntary.”  Aguirre-Mata v. State, 125 S.W.3d 473, 474 (Tex. Crim.
App. 2003) (en banc) (quoting Boykin v. Alabama, 395 U.S. 238, 242
(1969)).  If a defendant is made fully aware of the direct consequences of a
guilty plea, it is generally considered voluntary.[2]  State v.
Jimenez, 987 S.W.2d 886, 888 (Tex. Crim. App. 1999) (en banc); McGrew v.
State, 286 S.W.3d 387, 391 (Tex. App.–Corpus Christi 2008, no pet.).  A
plea “will not be rendered involuntary by lack of knowledge as to some
collateral consequence.”[3] 
Jimenez, 987 S.W.2d at 888.  In McGrew v. State, this Court
concluded that the imposition of consecutive sentences is not a direct consequence
but instead a collateral consequence of a guilty plea; therefore, a trial
court’s failure to warn of such a possibility does not render the plea
involuntary in violation of the defendant’s due process rights.[4]  286 S.W.3d at
391.

“A record indicating that
the trial court properly admonished the defendant about a guilty plea presents
a prima facie showing that the guilty plea was made voluntarily and knowingly.”
 Ex parte Tomlinson, 295 S.W.3d 412, 419 (Tex. App.–Corpus Christi 2009,
no pet.) (citing  Martinez v. State, 981 S.W.2d 195, 197 (Tex. Crim.
App. 1998)); Pena v. State, 132 S.W.3d 663, 666 (Tex. App.–Corpus
Christi 2004, no pet.).  The burden then shifts to the defendant to show that
he entered the plea without understanding the consequences of his action and he
suffered harm.  Pena, 132 S.W.3d at 666.  A defendant who pleads guilty
and attests that his plea is voluntary has a heavy burden on appeal to show
that the plea was involuntary.  Id.

B.        Trial Court Error

O’Bryan first argues that
his pleas were involuntary because the trial court failed to admonish him that
his sentences could be cumulated.  However, the trial court's ability to
cumulate a defendant’s sentences is a collateral consequence of a guilty plea. 
See McGrew, 286 S.W.3d at 391; see also Ex parte Morrow,
952 S.W.2d 530, 536 (Tex. Crim. App. 1997) (recognizing that courts have
characterized the possibility of imposition of consecutive sentences as a
collateral consequence “of which a defendant does not have to be knowledgeable
before his plea is considered knowing and voluntary”).  “[A] guilty plea is
considered voluntary if the defendant was made fully aware of the direct consequences.
 It will not be rendered involuntary by lack of knowledge as to some collateral
consequence.”  See McGrew, 286 S.W.3d at 391 (quoting Jimenez,
987 S.W.2d at 888).  Therefore, O’Bryan has not established that the trial
court's failure to warn him of that possibility rendered his pleas involuntary
in violation of due process.  See id.

Next, O’Bryan argues that
his pleas were involuntary because “he was not advised of the 25-year minimum
punishment as to Count[s] 1 and 4 until after the venire had already seen him
in his jail clothes and the trial court made it clear that if there was going
to be a trial, it was going to be that day . . . .” 
O’Bryan appears to argue that his plea was rendered involuntary because the
trial court somehow prevented him from changing his plea to “not guilty” by
stating that the trial would take place that day.[5]  O’Bryan does
not provide a clear and concise argument with citation to appropriate authority
to support his argument that his plea was rendered involuntary because the jury
panel saw him in his jail clothes before the trial court admonished him on the
range of punishment.  See Tex. R.
App. P. 38.1(i).  Therefore, we conclude that he has waived this
argument on appeal.  See id.

Nevertheless, we conclude
that O’Bryan’s argument is meritless.  After pleading not guilty on May 14,
2010, O’Bryan waived his right to a jury trial and requested a bench trial. 
The next day, O’Bryan appeared in court in his jail clothes.  The record
reveals that the trial court began the proceedings in another courtroom because
the trial court was concerned that O’Bryan was wearing his jail clothes.  The
trial court explained that it intended to make absolutely sure that O’Bryan was
waiving a jury trial before proceeding to its own courtroom.  O’Bryan advised
the trial court that he understood that he was waiving his right to a jury
trial on all four counts.   The trial court again asked O’Bryan if he wanted to
waive a jury trial for both the guilt/innocence stage of trial and, if found
guilty, the punishment stage.  O’Bryan stated that he did.

O’Bryan then notified the
trial court that he wanted to plead guilty.  At that point, the trial court
allowed O’Bryan to be transported to his courtroom.  Presumably, the jury panel
saw O’Bryan in his jail clothes while he was being transported.  The
proceedings continued in the trial court’s courtroom, O’Bryan pleaded guilty
outside the jury panel’s presence, and the trial court released the panel.[6]

In this case, O’Bryan was
not compelled by the trial court or anyone else to be tried in jail clothes.  See
Randle v. State, 826 S.W.2d 943, 944-45 (Tex. Crim. App. 1992) (providing
that an accused should not be compelled to stand trial in prison attire after a
timely objection because “[s]uch a compulsion would violate the defendant's
right to a fair trial and his right to be presumed innocent”); Kimble v.
State, 537 S.W.2d 254, 254-55 (Tex. Crim. App. 1976) (stating that the
accused has a right not to be tried in jail clothes because of the possible
infringement of the accused's presumption of innocence); Gibson v. State,
233 S.W.3d 447, 453 (Tex. App.–Waco 2007, no pet.) (“Requiring a defendant to
be tried in jail clothing infringes upon the fundamental right to a presumption
of innocence.”) (citing Estelle v. Williams, 425 U.S. 501, 512 (1976)). 
Moreover, the jury panel that allegedly saw O’Bryan in his jail clothes did not
participate in any way in O’Bryan’s trial.[7] 
Finally, the accused must “object to being tried in jail garments, just as he
must invoke or abandon other rights.”  Estelle, 425 U.S. at 508 (stating
that it is not an uncommon defense tactic to produce the defendant in jail
clothes in hope of eliciting sympathy from the jury).  If O’Bryan believed, as
he argues on appeal, that the jury panel should not have seen him in jail
clothes, he should have objected at that time.  See id.

Finally, O’Bryan appears
to argue that his pleas were involuntary because he was not required to
“acknowledge his guilt” to enter a guilty plea.  During O’Bryan’s plea hearing,
the trial court asked him if he was pleading guilty because he committed the
crime.  O’Bryan responded that he wanted to plead guilty, but did not want to
“say” that he was guilty of the crimes.[8] 
The trial court replied:

It’s
pretty black and white, actually.  There is only one way to do this.  You
either plead guilty and acknowledge your guilt or we go to a jury trial—or to a
trial and we determine whether or not—from the facts and the evidence, whether
you’re guilty or not.  It does not matter to me how you want to do it, but I
can’t do it for you.  You have to make the decision.[[9]]

 

O’Bryan, citing North
Carolina v. Alford, claims that the trial court should have allowed him to
plead guilty without admitting or acknowledging his guilt.  400 U.S. 25, 36
(1970).  In Alford, the defendant claimed he was innocent, but the trial
court still accepted his guilty plea to second-degree murder.  Id. at
28.  The defendant pleaded guilty to second-degree murder to avoid going to
trial on a first-degree murder charge and the possibility of receiving the
death penalty.  Id. at 31.  After he was convicted of second-degree
murder, the defendant maintained that his guilty plea was coerced and sought
habeas corpus relief.  Id. at 29.  The United States Supreme Court
upheld Alford’s conviction stating that “an individual accused of [a] crime may
voluntarily, knowingly, and understandingly consent to the imposition of a sentence
even if he is unwilling or unable to admit his participation in the acts
constituting the crime.”  Id. at 37.

In Alford, the
Supreme Court concluded that an express admission of guilt is not
constitutionally required and that the defendant’s guilty plea may still be
entered voluntarily, knowingly, and understandingly without such an admission. 
Id.  It did not conclude, as O’Bryan appears to argue, that a guilty
plea is rendered invalid or involuntary if a trial court refuses to accept a
defendant’s guilty plea when that defendant refuses to admit or acknowledge his
guilt.  O’Bryan cites no authority, and we find none, supporting a conclusion
that a guilty plea is rendered involuntary when the trial court requires the
defendant to admit or acknowledge that he is guilty.[10]  See
Thornton v. State, 601 S.W.2d 340, 347 (Tex. Crim. App. 1979) (“‘[I]t is
settled that regardless of the depth of one's desire to enter a plea of guilty
an accused does not have a constitutional right to have it accepted by the
trial court.’”) (quoting Alford, 400 U.S. at 38 n.11.); Mendez v.
State, 138 S.W.3d 334, 344 n.42 (Tex. Crim. App. 2004) (same); see also
Ex parte Tuley, 109 S.W.3d 388, 405 (Tex. Crim. App. 2002) (Price, J.,
concurring) (explaining that an “honorable trial judge” would probably not
accept a guilty plea from a defendant who states that he is not guilty of the
crime).  Therefore, we are not persuaded by O’Bryan’s argument.  We overrule
O’Bryan’s first issue.

C.        Due Course of Law

By his second issue, O’Bryan
generally asserts that his pleas were involuntary under the Texas
Constitution’s due course of law provision because the trial court did not
advise him that his sentences could be cumulated.  O’Bryan invites this Court
to “provide a more stringent review [of the trial court’s failure to admonish
him of the possibility that his sentences could be cumulated] under a due
course of law analysis.”  Citing Anderson v. State, O’Bryan asserts that
the trial court “must do more than is required to meet the minimum standards of
due process of law when a defendant pleads guilty in a felony case.”[11]  182 S.W.3d
914, 918 (Tex. Crim. App. 2006).  However, in Anderson, the court of
criminal appeals explained that the trial court must do more because in Texas
it has a statutory obligation to provide the proper admonishments under article
26.13.  See id. (citing Tex. Code
Crim. Proc. Ann. art. 26.13).  Nowhere in Anderson did the court
of criminal appeals state that the due course of law provision requires a “more
stringent review” in cases such as this.  In fact, the court did not even
mention the Due Course of Law clause in Anderson.  We overrule O’Bryan’s
second issue.[12]

III.        Compliance with Article 26.13

By his third issue,
O’Bryan contends that the trial court did not comply with article 26.13 of the
code of criminal procedure because it failed to admonish him that his sentences
could be stacked.  O’Bryan acknowledges that the court of criminal appeals held
in Simmons v. State that article 26.13 does not require a trial court to
admonish the defendant that his sentences may be cumulated.  See 457
S.W.2d 281, 283 (Tex. Crim. App. 1970). However, O’Bryan argues that this Court
is not bound by this holding because the legislature changed the language in
article 26.13 since Simmons.

O’Bryan states that “[a]rticle
26.13, as written at the time did not specifically require that a defendant be
admonished as to the range of punishment, only that he be admonished as to the
‘consequences’ of his plea.”  This is the extent of O’Bryan’s argument.

We note that when Simmons
was written, article 26.13 stated that a defendant pleading guilty “shall be
admonished by the court of the consequences.”  See Act of Jan. 1, 1966,
59th Leg., R.S., ch. 722, § 1, art. 26.13, 1965 Tex. Gen. Laws, 317, 427
(amended 1975) (current version at Tex.
Code Crim. Proc. Ann. art. 26.13(a)(1)).  However, the court of criminal
appeals still found that this language did not require the trial court to
admonish a defendant of the possibility that his sentences could be cumulated. 
See Simmons, 457 S.W.2d at 283; see also McGrew, 286
S.W.3d at 391 (concluding that the possibility of cumulative sentences is a
collateral consequence of a guilty plea).

Article 26.13 now
requires, more specifically, for the trial court to admonish a defendant
pleading guilty of “the range of the punishment attached to the offense.”  See
Tex. Code Crim. Proc. Ann. art.
26.13(a)(1).  O’Bryan cites no authority, and we find none, supporting a
conclusion that the legislature intended that article 26.13’s admonishment on
the range of punishment requires the trial court to admonish the defendant of
the possibility that the sentences may be cumulated.  See Tapps v. State,
294 S.W.3d 175, 177 (Tex. Crim. App. 2009) (“Under the canons of statutory
construction, we are to construe a statute according to its plain language,
unless the language is ambiguous or the interpretation would lead to absurd
results that the legislature could not have intended.  To do so, we focus on
the literal text of the statutory language in question, reading it in context
and construing it according to the rules of grammar and common usage.”)
(internal quotations omitted); see also Barrow v. State, 207 S.W.3d 377,
379 (Tex. Crim. App. 2006) (providing that the decision to cumulate a
defendant’s sentence does not “raise the ‘statutory maximum’ punishment” for
the offense); Ex parte Williams, 704 S.W.2d 773, 775 (Tex. Crim. App.
1986) (“[T]he trial court is not required to admonish as to its discretion to
cumulate sentences.”) (citing Simmons, 457 S.W.2d at 286).  Therefore,
we overrule O’Bryan’s third issue.

IV.       Failure to Conduct Motion for New
Trial Hearing

            By his fourth issue, O’Bryan contends
that the trial court erred in failing to conduct a hearing on his motion for
new trial.  Specifically, O’Bryan argues that the allegations in his affidavit

gave
rise to reasonable grounds of ineffective assistance based on (1) serious
misinformation communicated to O’Bryan by his trial counsel regarding the
sentence he would receive if he pled guilty, (2) counsel’s failure to request a
continuance after O’Bryan was seen by the venire in his jail clothes, and then
learned later that . . . the minimum sentence was 25
years—not five years, and (3) counsel’s failure to make O’Bryan aware that his
sentences could be stacked.

 

A.        Standard of Review and Applicable Law

            A defendant is entitled to a hearing
on his motion for new trial if the motion and accompanying affidavits raise
matters not determinable from the record and the defendant “establishes the
existence of ‘reasonable grounds’ showing that [he] could be entitled to
relief.”  Smith v. Texas, 286 S.W.3d 333, 338-39 (Tex. Crim. App. 2009) (internal
quotations omitted).  Although the affidavits are not required to establish a
prima facie case, a hearing is not required if the affidavits are conclusory in
nature and unsupported by the facts.  Id. at 339.

We review the trial
court’s denial of a motion for new trial hearing under an abuse of discretion
standard.  Id.  A trial court abuses its discretion in denying a
hearing on the defendant’s motion for new trial only when no reasonable view of
the record could support the trial court’s ruling.  Holden v. State, 201
S.W.3d 761, 763 (Tex. Crim. App. 2006).  “Our review, however, is limited to
the trial judge’s determination of whether the defendant has raised grounds
that are both undeterminable from the record and reasonable, meaning they could
entitle the defendant to relief.”  Smith, 286 S.W.3d at 340.

The defendant may raise a
claim of ineffective assistance of counsel in a motion for new trial.  Id. 
“Under Strickland v. Washington, a defendant seeking to challenge
counsel’s representation must establish that his counsel’s performance (1) was
deficient, and (2) prejudiced his defense.”  Id. (citing Strickland
v. Washington, 466 U.S. 668, 687 (1984)).  In order to establish that he
was prejudiced by trial counsel’s alleged deficient performance, “the appellant
must show there is a reasonable probability that, but for his counsel’s
unprofessional errors, the results of the proceeding would have been
different.”  Id.  To be entitled to a hearing on his motion for new
trial on the basis that his trial counsel rendered ineffective assistance, the
“defendant must allege sufficient facts from which a trial court could
reasonably conclude both that counsel failed to act as a reasonably competent
attorney and that, but for counsel’s failure, there is a reasonable likelihood
that the outcome of his trial would have been different.”  Id.

B.        Discussion 

O’Bryan claims that the
following allegations in his affidavit “gave rise to reasonable grounds of
ineffective assistance”:  (1) “I went to ply [sic] hearing they offer 40
yrs[.]  [H]e told me [i]f I ply [sic] guilty [t]hat the Judge would probly
[sic] give me 10-12 yrs”; (2) “I went to court[.]  Lawyer told me to plead
guilty[.]  I was in jail clothes and new [sic] that I should be in [p]lain
clothes for jury trial[.]  [T]hey seen me and I had no other choice [b]ut to
have Judge Trail [sic]”; (3) “[Trial Counsel] said my case [r]anged 5-99 got in
there[.]  After pleading guilty my sentences carried 25 to [l]ife”;[13] and (4) “[Trial
Counsel] said the judge would only give me 25 yrs [n]o more than 30 yrs.”

Even erroneous
predictions by trial counsel regarding the punishment a defendant may receive do
not amount to ineffective assistance if the trial court has properly admonished
the defendant.  Messer v. State, 757 S.W.2d 820, 826 (Tex. App.–Houston
[1st Dist.] 1988, pet. ref'd).  Here, the trial court properly admonished
O’Bryan on the correct range of punishment on all four counts.  In fact, during
the plea hearing, when O’Bryan stated that he had been told that the range of
punishment for aggravated sexual assault of a child with a deadly weapon was
between five and ninety-nine years, the trial court corrected this
misinformation and clarified that the correct range of punishment was between
twenty-five and ninety-nine years or life.  The trial court also informed
O’Bryan that he was free to change his plea to not guilty now that he was aware
of the correct range of punishment for that offense.  O’Bryan stated, “I plead
guilty.  I mean, I just didn’t understand.  Something was told to me
different.  That’s why—whether it was a mistake or not, it was never brought
back to my attention.  Okay?”  The trial court advised O’Bryan that it was
bringing the proper range of punishment to his attention, and O’Bryan stated
that he understood “that, through [his] lawyer.”  The trial court then repeated
that the range of punishment for aggravated sexual assault of a child with a deadly
weapon was between twenty-five and ninety-nine years or life and stated that
the range of punishment for indecency with a child was not less than two years
or more than twenty years.  The trial court asked O’Bryan if understanding the
ranges of punishment, he still insisted upon waiving all of his rights and
pleading guilty to all four counts in the indictment.  O’Bryan replied, “Yes,
sir.”

Based on our review of
the record, the trial court explained the full range of punishment to O’Bryan
and ensured that O’Bryan understood the range of punishment for all four counts. 
After stating that he understood the range of punishment for each count,
O’Bryan still pleaded guilty.  Therefore, in view of the clear admonitions
given by the trial court before the plea, which O’Bryan stated he understood, we
cannot conclude that his plea was involuntary and that he was denied effective
assistance of counsel.  See Messer, 757 S.W.2d at 826.

Furthermore, in his
affidavit, O’Bryan did not address the prejudice prong—O’Bryan never claimed
that but for trial counsel’s alleged erroneous predictions regarding his
punishment, there was a reasonable probability that he would not have pleaded
guilty.  See Smith, 286 S.W.3d at 340.  In fact, as previously
discussed, the record shows that the trial court correctly stated the ranges of
punishment for all four counts, and O’Bryan stated that he understood those
ranges and still proceeded to plead guilty.  Because O’Bryan did not meet his
burden of alleging sufficient facts from which the trial court could have
reasonably concluded that, but for counsel’s failure, there was a reasonable
likelihood that the outcome of his trial would have been different, the trial
court did not abuse its discretion in refusing to hold a motion for new trial
hearing on that basis.  Id.

            Next, O’Bryan argues on appeal that he
was entitled to a hearing on his motion for new trial because his trial counsel
rendered ineffective assistance by failing to request a continuance after
O’Bryan was seen by the venire in his jail clothes.  Because of the nature of
O’Bryan’s complaint on appeal—that the trial court failed to hold a hearing on
his motion for new trial—he must have raised his appellate complaint at some
point during the motion for new trial proceedings to preserve it for appellate
review.  Keeter v. State, 175 S.W.3d 756, 759-60 (Tex. Crim. App. 2005)
(concluding that the appellant did not preserve for appellate review his
complaint that the trial court erred in failing to grant his motion for new
trial on the basis of a Brady violation because he did not raise that complaint
in his motion for new trial); see Tex.
R. App. P. 33.1(a)(1)(A) (providing, in relevant part, that for a
complaint to be presented on appeal, a timely request, objection, or motion
must have been made to the trial court, which “states the grounds for the
ruling that the complaining party sought from the trial court with sufficient
specificity to make the trial court aware of the complaint, unless the specific
grounds were apparent from the context”).  O’Bryan stated in his motion for new
trial “that the jury in waiting had already seen [him] in his jail clothes
(which led [him] to believe he had no choice but to plead guilty).”  In his
affidavit, he stated, “I was in jail clothes and new [sic] that I should be in
[p]lain clothes for jury trial[.]  [T]hey seen me and I had no other choice
[b]ut to have Judge Trail [sic].”[14] 
However, O’Bryan never complained either in his motion for new trial or in his
affidavit that he was entitled to a hearing on his motion for new trial on the
basis he argues on appeal—that his trial counsel failed to request a
continuance after the venire saw him in his jail clothes.  Because O’Bryan did
not raise his appellate argument at any point during the new trial proceedings,
he has not preserved this argument for our review.  See Keeter, 175
S.W.3d at 759-60; see also Gallo v. State, 239 S.W.3d 757, 768 (Tex.
Crim. App. 2007) (providing that appellate arguments must comport with
objections at trial); Swain v. State, 181 S.W.3d 359, 367 (Tex. Crim.
App. 2005) (setting out that appellant did not preserve issue for appellate
review because his argument at trial did not comport with his argument on
appeal).

            Finally, O’Bryan did not argue in his
motion for new trial or in his affidavit, as he argues on appeal, that he was
entitled to a new trial because his trial counsel rendered ineffective
assistance by failing to inform him that his sentences could be stacked.  Therefore,
he has not preserved this issue for our review.  See Keeter, 175 S.W.3d
at 759-60; see also Gallo, 239 S.W.3d at 768; Swain, 181 S.W.3d at
367.

Accordingly, we cannot
conclude that the trial court abused its discretion in denying a hearing on
O’Bryan’s motion for new trial on grounds that were not presented to it.  See
Keeter, 175 S.W.3d at 760 (“All a party has to do to avoid the forfeiture
of a complaint on appeal is to let the trial judge know what he wants, why he
thinks himself entitled to it, and to do so clearly enough for the judge to
understand him at a time when the trial court is in a proper position to do
something about it.”) (internal quotations omitted); Elliot v. State, 56
S.W.3d 780, 783 (Tex. App.–Houston [14th Dist.] 2001, pet. ref'd) (“Under our
adversary system, it is incumbent upon litigants to frame the issues for the
trial court and to do so at a time and in a manner that will give the trial
court an opportunity to respond to the complaint and, if possible, cure any
error.  Reversing for error that was not brought to the trial court's
attention, in effect, permits the party challenging the trial court's ruling to
second-guess his own trial strategy and tactical decisions after they fail to
produce the desired result.  Moreover, there is an inherent incongruity in
reversing a trial court based on an ‘error’ when it was never given an
opportunity to make a ‘correct’ decision.”).  We overrule O’Bryan’s fourth
issue.

V.        Attorney’s Fees and Investigator’s
Fees

            By his fifth issue, O’Bryan contends
that the trial court erred in assessing court-appointed attorney’s fees and court-appointed
investigator’s fees.  The State concedes that there is no evidence of O’Bryan’s
ability to pay the attorney’s or investigator’s fees.  

            A defendant who is determined by the
trial court to be indigent is presumed to remain indigent for the remainder of
the proceedings in the case, unless a material change in the defendant’s
financial circumstances occurs.  Tex.
Code Crim. Proc. Ann. art. 26.04(p) (Vernon Supp. 2010).  An indigent
defendant is entitled to court-appointed investigative services in the same way
that he is entitled to court-appointed counsel.  Tex. Code Crim. Proc. Ann. art. 26.05(d) (Vernon Supp. 2010). 
In order to assess attorney’s fees and investigator’s fees as court costs, the
trial court is required to determine that the defendant has financial resources
that would enable him to offset in part or whole the costs of the services
provided.  Id. art. 26.05(g).

            On December 7, 2008, the trial court
determined that O’Bryan was indigent and appointed trial counsel to represent
him.  The trial court also appointed appellate counsel to represent O’Bryan on
appeal.  There is no evidence in the record that a material change in O’Bryan’s
financial circumstances occurred; therefore, it is presumed that O’Bryan
remained indigent throughout the proceedings.  See Tex. Code Crim. Proc. Ann. art.
26.06(p).  Furthermore, the record before us contains no evidence that O’Bryan
had any financial resources that would enable him to offset in part or whole
the fees assessed by the trial court.  See Mayer v. State, 274 S.W.3d
898, 901 (Tex. App.–Amarillo 2008), aff'd, 309 S.W.3d 552 (Tex. Crim.
App. 2010); see also Morris v. State, No. 10-10-00158-CR, 2010 Tex. App.
LEXIS 9684, at *7 (Tex. App.–Waco Dec. 8, 2010, no pet.) (mem. op., not
designated for publication) (concluding that the evidence was insufficient for
the trial court to order the defendant to pay attorney’s and investigator’s
fees because no evidence was presented to the trial court that the defendant
had financial resources that enabled him to pay all or any part of the fees);
Willis v. State, No. 10-09-00420-CR, 2010 Tex. App. LEXIS 8255, at *2 (Tex.
App.–Waco Oct. 13, 2010, no pet.) (mem. op., not designated for publication) (“If
the State fails to present evidence that the defendant is able to pay all or
part of his court-appointed attorney's fees, then the trial court commits error
by assessing any part of those fees as costs of court.”).  In fact, the trial
court never made a determination that O’Bryan had the financial resources
enabling him to pay the fees.  Without evidence to demonstrate that O’Bryan had
the financial resources to offset the costs of the attorney’s fees and
investigator’s fees, the trial court erred in ordering reimbursement of those
fees.  See Mayer, 274 S.W.3d at 901 (citing Tex. Code Crim. Proc. Ann. art. 26.05(g); Slaughter v.
State, Nos. 2-04-050-CR, 2-04-051-CR, 2005 Tex. App. LEXIS 713, at **3-5
(Tex. App.–Fort Worth Jan. 27, 2005, no pet.) (mem. op., not designated for
publication)); see also Morris, 2010 Tex. App. LEXIS 9684, at *7;
Willis, 2010 Tex. App. LEXIS 8255, at *2.  We sustain O’Bryan’s fifth issue. 
Accordingly, we reverse the part of the judgment ordering O’Bryan to pay court
costs and remand the case so that the trial court may recalculate the costs
O’Bryan owes, if any, and determine if O’Bryan may be entitled to a refund.[15]  See Mayer,
274 S.W.3d at 901; see also Morris, 2010 Tex. App. LEXIS 9684, at *7;
Willis, 2010 Tex. App. LEXIS 8255, at *2.

VI.       Inmate Account

            By his sixth issue, O’Bryan contends
that the trial court erroneously signed four “withdrawal orders, one for each
count of conviction” directing the Texas Department of Criminal Justice to
withdraw $3,093.50 from his inmate account.

            However, because of our disposition of
O’Bryan’s fifth issue, we need not address his sixth issue.  See Tex. R. App. P. 47.1.  Upon remand, the
trial court must recalculate the amount O’Bryan still owes, if any, in court
costs and may only order that amount to be withdrawn from his inmate account.  See
Tex. Gov’t Code Ann. § 501.014
(e)(4) (Vernon Supp. 2010) (providing that upon notification from the trial
court “the department shall withdraw from an inmate's account any amount the
inmate is ordered to pay by order of the court” including payment in full for
all orders for court fees and costs).[16]

VII.      Conclusion

            We affirm the judgment of the trial
court as it relates to O’Bryan’s conviction and punishment, reverse the
judgment assessing court costs, and remand for proceedings consistent with our
opinion.

________________            ___     

Rogelio Valdez

                                                                                                Chief
Justice

 

Do not publish. 

Tex. R. App. P. 47.2(b)

Delivered and filed the


14th day of April, 2011.

 









[1]
This case is before us on transfer from the Tenth Court of Appeals in Waco,
Texas, pursuant to a docket equalization order issued by the Supreme Court of
Texas. See Tex Gov't Code Ann.
§ 73.001 (Vernon 2005).





[2]
“A consequence has been defined as ‘direct’ where it is ‘definite, immediate
and largely automatic.’”  State v. Jimenez, 987 S.W.2d 886, 889 n.5
(Tex. Crim. App. 1999) (en banc); McGrew v. State, 286 S.W.3d 387, 391
(Tex. App.–Corpus Christi 2008, no pet.).





[3]
“A consequence has been defined as ‘collateral,’ rather than ‘direct,’ where ‘it
lies within the discretion of the court whether to impose it,’ or where ‘its
imposition is controlled by an agency which operates beyond the direct
authority of the trial judge.’”  Jimenez, 987 S.W.2d at 889 n.6; McGrew,
286 S.W.3d at 391.





[4]
No other Texas court has determined whether the failure to warn a defendant of
the possibility that sentences could be cumulated violates due process and
renders a guilty plea involuntary.  “However, many federal circuits have held
that the imposition of consecutive sentences is a collateral consequence of a
guilty plea, and the failure to warn of this possibility does not render the
plea involuntary in violation of the defendant's due process rights.”  McGrew,
286 S.W.3d at 391 (citing Wilson v. McGinnis, 413 F.3d 196, 199 (2nd
Cir. 2005); United States v. Hurlich, 293 F.3d 1223, 1231 (10th Cir.
2002); United States v. Hernandez, 234 F.3d 252, 256 (5th Cir. 2000); United
States v. Ferguson, 918 F.2d 627, 631 (6th Cir. 1990); United States v.
Wills, 881 F.2d 823, 827 (9th Cir. 1989); United States v. Ray, 828
F.2d 399, 417-19 & n.19 (7th Cir. 1987)).





[5]
O’Bryan never stated or indicated that he wanted to change his plea to not
guilty during his plea hearing.  In fact, he insisted that he wanted to plead
guilty, even after the trial court informed him that the range of punishment for
aggravated sexual assault of a child with a deadly weapon is twenty-five years
to ninety-nine years or life.  The trial court even informed O’Bryan that he
was free to change his plea to not guilty once he understood the correct ranges
of punishment on all four counts.





[6]
Our review of the record indicates that the jury panel was not present when
O’Bryan pleaded guilty.





[7]
The trial court dismissed the jury panel after explaining that O’Bryan had
waived his right to a jury trial.





[8]
We note that the record contains a signed stipulation of evidence and judicial
confession signed by O’Bryan.  In this document, O’Bryan stated that he was
pleading guilty because he was guilty of the crimes.  O’Bryan then stipulated
that he had committed all four counts as stated in the indictment.





[9]
O’Bryan then stated, “Guilty.”  This colloquy followed:

The Court:         And I want to ask you
once again, are you pleading guilty because of any threats or force used
against you or promises made to you?

[O’Bryan]:         No, sir.

The Court:         Is the sole
reason—that means the only reason—you’re pleading guilty because you committed
the crime to which you’re pleading?

[O’Bryan]:         Yes.





[10]
Further, we note that O’Bryan does not explain how his guilty plea was rendered
involuntary because he was not allowed to deny his guilt and enter a guilty
plea.  See Tex. R. App. P.
38.1(i) (“The brief must contain a clear and concise argument for the
contentions made . . . .”).





[11]
O’Bryan cites no other authority and provides no other basis for this
assertion.





[12]
The Texas Constitution should be interpreted as providing broader protection
than its federal counterpart only if such an interpretation has “firm support
in state history or policy.”  Cobb v. State, 85 S.W.3d 258, 267-68 (Tex.
Crim. App. 2002).  Thus, we should interpret the Texas Constitution as
providing rights not found in the federal constitution “only when unique
aspects of Texas history, jurisprudence, or law support that separate
interpretation.”  Id. at 268.  O’Bryan neither claims nor cites authority
providing that unique aspects of Texas history, jurisprudence, or law support a
conclusion that the Texas Constitution’s due course of law provision affords
more protection than the due process clause in cases where the defendant pleads
guilty and is not advised that his sentences could be cumulated.





[13]
We note that the trial court explained the correct range of punishment for
aggravated sexual assault of a child with a deadly weapon to O’Bryan before he
pleaded guilty.





[14]
We note that O’Bryan had waived his right to a jury trial before he entered his
guilty pleas.  In addition, as discussed earlier, the trial court determined
that O’Bryan was not requesting a jury trial before the jury venire allegedly
saw him in his jail clothes.





[15]
O’Bryan’s court appointed attorney received $1,863.50 and his court appointed
investigator received $550.





[16]
We note that a court order directing prison officials to withdraw money from an
inmate trust account is a civil matter akin to a garnishment action or an
action to obtain a turnover order.  Harrell v. State, 286 S.W.3d 315,
317-19 (Tex. 2008); Johnson v. Tenth Judicial Dist. Court of Appeals at Waco,
280 S.W.3d 866, 874 (Tex. Crim. App. 2008) (original proceeding).  Due process
entitles an inmate to receive notice of the withdrawal order and an opportunity
to be heard, even though those requirements might be accorded the inmate after
funds are withdrawn.  Harrell, 286 S.W.3d at 321.  It is unclear whether
O’Bryan has had an adequate opportunity “to compare the amounts assessed by the
trial court [in the underlying criminal proceeding] to the amount withdrawn and
alert the court of any alleged errors.”  See id.  However, given that we
have modified the judgment, it is incumbent on O’Bryan to alert the trial court
of any errors in the amount withdrawn from his inmate account.