**AFFIRMED and Opinion Filed July 29, 2021**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-19-00747-CR

**STEWART CARTER HURST, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 354th District Court**
**Hunt County, Texas**
**Trial Court Cause No. 32486CR**

## MEMORANDUM OPINION

Before Justices Molberg, Reichek, and Nowell
Opinion by Justice Molberg

A jury convicted appellant Stewart Hurst of aggravated sexual assault of a child under fourteen years of age and sentenced him to twenty-five years' confinement. In two issues, appellant contends the trial court abused its discretion by admitting extraneous-act evidence showing that he (1) abused alcohol and drugs and (2) committed acts of domestic violence. Because we conclude the trial court did not abuse its discretion by finding this evidence relevant under rule 404(b) and admissible under rule 403, we affirm.

# BACKGROUND

## *The offense*

Appellant and S.H. had an on-again, off-again relationship over a five-year period. In 2015, appellant moved in with S.H. and her two daughters—Isabel and Naomi[1]—at their home in Lone Oak, Texas, after S.H. discovered that she was pregnant with appellant's child.

S.H. testified at trial that one day in June of 2015, she and appellant—who had been drinking all day—got into an argument, and he physically attacked her. Appellant left once the police arrived, but he returned later and continued attacking her. Appellant used his fists to hit S.H. "all over," but mainly on her arms and head. S.H. called the police a second time, and, for the second time, appellant left. S.H. put her daughters to bed, locked the house, and then fell asleep on the living room couch.

S.H. woke up "to somebody beating on doors and windows around the house." S.H. saw that it was appellant, who sounded "extremely intoxicated," and before she knew it, he had made it into the house through the back door. She stayed on the couch, hoping to avoid further confrontation. But appellant was being noisy, yelling and making a sandwich in the kitchen, so S.H. moved to the bedroom. Appellant followed her there and again assaulted her, striking her arms and head with his fists.

---

[1] To protect the anonymity of the child victim and her sister, we will refer to them using these pseudonyms.

S.H. raised her arm to protect herself "and then the next thing [she] remember[ed] [was] laying on the floor in a pile of clothes," and she could hear her daughters crying. S.H. assumed she blacked out because the last thing she remembered was raising her arm before she woke up on the floor; she was unsure for how long she was out.

While S.H. was unconscious, appellant allegedly sexually assaulted her ten-year-old daughter, Isabel—the charged offense at issue in this appeal. Appellant entered the room where Isabel and Naomi were sleeping, woke Naomi, and told her to leave. Isabel had been awake, listening to her mother struggle with appellant, but she no longer heard her. Based on appellant's aggressive, loud behavior, Isabel thought he must have been drinking. Isabel testified that appellant touched her thighs with his hands before telling her to pull her pants and her panties down, which she did. Isabel testified that appellant then inserted his fingers into her vagina. She cried, told him she did not like it, and asked him to stop; she called for help to no avail. Appellant threatened to kill Isabel if she told anyone what he did.

When S.H. came to, her daughters were both crying, standing behind appellant in the hall outside the girls' bedrooms. Appellant told S.H. that Naomi wet the bed and he had to take care of it, but Naomi testified that that was not true. If she had had an accident when she was that age, she said, she would have changed herself.

Isabel did not tell S.H. or anyone else about what appellant did to her that night until two years later in 2017. At that time, S.H. fell on hard times, and Isabel

and Naomi went to live with their father, R.G, and his then-wife, H.G. Isabel appeared to be struggling with the change, so R.G. and H.G. sent her to Cynthia Franklin, a psychiatric nurse practitioner, for counseling. During one of their sessions, Isabel told Franklin about appellant's sexual assault. Franklin diagnosed her as having post-traumatic stress disorder and major depressive disorder, which she concluded stemmed from Isabel's sexual assault. Franklin, who had a statutory duty to report abuse, notified the Department of Family and Protective Services, which in turn notified Lone Oak Police Department.

*Extraneous-act evidence*

In addition to testifying about the above-described offense and its circumstances, S.H., Isabel, and Naomi also testified that appellant used alcohol and drugs, and that he was physically abusive towards S.H.

S.H. testified that appellant drank alcohol—mainly liquor—every day. She said that he used methamphetamine, marijuana, and "pills of any sort." Isabel testified that appellant drank alcohol almost every day and that she saw him use marijuana. Isabel said he was mean and aggressive when he drank. She said that he would hit S.H., and he would throw objects in the house. It happened "a lot," she said: any time appellant got mad, "he would hit" S.H., and he got mad often when he drank. Naomi also testified that appellant drank every day and that "there were drugs going on in the home."

–4–

## ANALYSIS

In his first issue, appellant argues that the trial court abused its discretion by admitting testimony about his use of alcohol and drugs. He argues that this testimony was not probative of a 404(b)-approved purpose, such as motive or opportunity, and it therefore should have been excluded. Appellant further argues that its probative value was substantially outweighed by the danger of unfair prejudice and so should have been excluded under rule 403. In his second and final issue, appellant argues that the trial court abused its discretion by allowing testimony that he committed acts of domestic violence against S.H. Appellant again urges that this testimony was inadmissible under rules 404(b) and 403.

### *Preservation*

We first consider whether these issues are preserved for our review. Error preservation is a systemic requirement on appeal, and we should not address the merits of an unpreserved issue. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009). To preserve a complaint for appellate review, an appellant must make a timely, specific objection and obtain an adverse ruling, which may be either express or implicit. *See* Tex. R. App. P. 33.1(a).

Appellant failed to object to any of the testimony he complains about when it was admitted during trial, so we must look elsewhere in the record to determine whether his issues are preserved. A motion in limine is a "preliminary matter and normally preserves nothing for appellate review." *Fuller v. State*, 253 S.W.3d 220,

–5–

232 (Tex. Crim. App. 2008). However, "error can be preserved by a timely objection made in a hearing outside the presence of the jury." *Manns v. State*, 122 S.W.3d 171, 190 (Tex. Crim. App. 2003). While generally an objection must be made at the time the subject is raised during trial, *see Fuller*, 253 S.W.3d at 232, the rules of evidence "excuse[] the requirement to repeat objections in front of the jury if a proper objection has been made outside the jury's hearing." *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); TEX. R. EVID. 103(b) ("When the court hears a party's objections outside the presence of the jury and rules that evidence is admissible, a party need not renew an objection to preserve a claim of error for appeal.").

We should not be hypertechnical in examining whether error is preserved. *See Bekendam v. State*, 441 S.W.3d 295, 300 (Tex. Crim. App. 2014). Instead, "[w]e should consider the context when we determine whether a party has preserved a complaint for appeal." *Keeter v. State*, 175 S.W.3d 756, 760 (Tex. Crim. App. 2005).

Appellant filed a motion in limine before trial, requesting a hearing to determine the admissibility of any extraneous offenses or bad acts that the State might want to offer. The State filed a response, arguing that the court should allow evidence of—among other things—alcohol and drug use by appellant as a contributing factor to his "domestic violence and sexual assaults" and also "acts of domestic violence against [S.H.] observed by [Isabel] and [Naomi]." The State's

–6–

response outlined what it anticipated its witnesses would testify to on these subjects: S.H. would testify that appellant was an alcoholic who drank every day and used drugs, and he "was angry, violent, and physically abusive towards her when he drank and used drugs." Further, "[t]he physical abuse was routine and witnessed by" Isabel and Naomi. Isabel would testify that she witnessed appellant use drugs and alcohol, and she saw him become violent when he did so. This all happened "frequently," and she "would often see [S.H.] be physically abused by" appellant. Similarly, Naomi would testify that appellant "would drink nearly every day and that while he was drunk he would be angry and violent." Finally, citing rules 404(b) and 403, the State argued that this evidence should be admitted at trial.

The trial court held a hearing on appellant's motion in limine and the State's response after the jury was selected and sworn. The parties offered several exhibits, including two affidavits and three video recordings of S.H., Isabel, and Naomi being interviewed, and the trial court reviewed them before the hearing. The affidavits were from R.G. and H.G, and each generally describes S.H. dropping off Isabel and Naomi, their difficult transition, and the subsequent discovery of appellant's sexual assault through counseling. The video exhibits included details pertinent to appellant's issues on appeal that reflected what the State alleged in its response to appellant's motion in limine.

At the hearing, Appellant, referring to his filed motion in limine, objected on the basis that evidence of his past use of alcohol and drugs was extraneous to the

offense and "would only tend to prejudice the jury against" him. The State argued that S.H., Naomi, and Isabel should be able to testify that appellant used alcohol and drugs and that they made him angry and violent. Appellant's drug abuse and violent behavior, the State argued, provided a context in which the charged sexual assault was committed: it was "a direct contributing factor to the charged offense." Appellant responded that "a pattern of drinking and then being intoxicated" did not need to be presented "to show that he was possibly drunk and had a beer in his hand" when the sexual assault happened.

Seeming at first to limit its ruling to the complainant, the trial court ruled that "the child's testimony regarding relevant drug and alcohol use by the accused will be admissible." The court elaborated that it

> performed the [403] balancing test; and I understand that that can be offered for the specific reasons under 404(b); for opportunity, preparation, plan, knowledge, identity.
>
> You can't get into absence of mistake or lack of accident until one of those is raised at trial. So that wouldn't be one of the reasons it could be offered; but it could certainly be offered to show motive, opportunity, preparation, plan, intent, things of that nature, if there's a pattern of events that occur that lead up to this type of behavior. So I'm going to allow the admission of those statements.
>
> MR. BRIDGER: Yes, Your Honor.
>
> THE COURT: Next?
>
> MR. STOREY: Can I – just to – I want to make sure I'm very clear. So – because the State mentioned alcohol use but also commingled that with assault and some other things, so are you ruling specifically on the substance abuse issue and drinking or is this more expansive?

–8–

THE COURT: I'm ruling on the drugs and alcohol use by the accused at this point. That's what was addressed just a moment ago.

We conclude that appellant preserved this issue for our review since the trial court ruled, at least implicitly, that testimony in general about his drug and alcohol use was admissible. *See* TEX. R. APP. P. 33.1(a). Though the court's ruling was made during what was ostensibly a hearing on appellant's motion in limine[2]—the granting or denying of which does not preserve error—the trial court did not rule on the motion but instead made an *evidentiary ruling* that preserved error. *See Stinson v. State*, No. 05-07-01236-CR, 2009 WL 1267348, at *1–*2 (Tex. App.—Dallas May 8, 2009, no pet.) (not designated for publication) (concluding that error was preserved when the trial court ruled on appellant's objections made at a hearing on a motion in limine held before opening statements).

Regarding appellant's second issue, appellant argued in his motion in limine that extraneous "bad conduct" should be excluded as irrelevant and more prejudicial than probative. At the hearing, appellant argued that Isabel should be limited to testifying about violent acts that were "directly relevant to the event." The State argued that testimony about appellant's physical abuse of S.H. in general was relevant because Isabel's awareness of appellant's violent nature helped explain her

---

[2] *Cf. Rawlings v. State*, 874 S.W.2d 740, 742 (Tex. App.—Fort Worth 1994, no pet.) ("Regardless of the label used by the trial judge and defense counsel, we look to the substance of the objection or motion to determine its effect.").

delayed outcry given that appellant threatened to kill her if she reported the sexual assault.

The court ruled that S.H. could testify that appellant attacked her on the night of the charged offense, but it granted appellant's motion in limine regarding any prior acts of violence. The court wanted to wait "to see how the evidence plays out to make a decision in terms of the balancing test." The court further explained that Isabel could testify about physical abuse committed on the day of the sexual assault, but her observations about any other abuse of S.H. "beyond the day of the offense" "will not be admitted without approaching first."

The State raised the issue again after opening statements. In his opening statement, in the context of discussing the burden of proof, defense counsel stated that, "It has to be that certain and I would say that after several years have passed, after having no other eyewitnesses to any of this, I think that you should be very cautious in this case . . . ." Based on that, the State approached the bench and argued that appellant "opened the door by talking about a delayed report," and that, in response, "we need to be able to rebut the reason or to establish the reason for that." The trial court reserved its ruling. After S.H. testified, the State again addressed the issue, and the trial court ruled that it did not believe the door had been opened at that point.

But then, after appellant cross-examined Isabel about her relationship with her great-grandmother, the State raised the issue again, arguing that appellant eliciting

Isabel's testimony that she had a good relationship with her great-grandmother—who did not like appellant—raised the question of why Isabel did not outcry to her. The State argued that the evidence was not being offered for a propensity purpose: it was being offered to explain Isabel's delayed outcry. The State further argued that the evidence was more probative than prejudicial since appellant was going "down the line of attacking the delay in reporting." Appellant responded that any "additional information would just be unnecessary piling onto what has already been testified to." The trial court ruled that "the defense has opened the door," and that evidence about appellant's abuse of S.H. was admissible.

Because the trial court ultimately ruled outside the presence of the jury that evidence of appellant's abuse of S.H. was admissible, we conclude that any complaint about testimony describing that abuse given after the court's ruling is preserved for our review. Although by the time the trial court made its ruling, appellant's objections arguably lacked the "sufficient specificity" generally required to preserve error, we decide that appellant's "specific grounds" for objecting—rules 404(b) and 403—"were apparent from the context" given that appellant never explicitly forfeited the nature of his original complaint, which the parties and the trial court discussed throughout trial. *See* TEX. R. APP. P. 33.1(a)(1)(A); *see also Keeter*, 175 S.W.3d at 760.

Our conclusion that both of appellant's issues are preserved is further supported by comments the trial court made during the hearing and its rulings, which

–11–

referenced rule 404(b) and balancing under rule 403, indicating that it understood that the disagreement between the parties was about those rules. *See Zavala v. State*, No. 05-16-00227-CR, 2017 WL 2180700, at *4 (Tex. App.—Dallas May 18, 2017, no pet.) (mem. op., not designated for publication) ("To determine whether a particular legal argument was preserved for appellate review without having been expressly made below, we look for statements or actions on the record that clearly indicate the trial court's and trial counsel's understanding."). Therefore, we turn to the merits of appellant's complaints.

*Rules 404(b) and 403*

We conclude that the trial court did not abuse its discretion because evidence of appellant's abuse of alcohol, drugs, and S.H. was (1) relevant to explain why Isabel did not immediately outcry and (2) not substantially more prejudicial than probative.

We review a trial court's ruling on the admissibility of evidence under an "abuse of discretion" standard. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). This means that "as long as the trial court's ruling was at least within the zone of reasonable disagreement," we will affirm. *Id*. If the "ruling is correct under any applicable theory of law, it will not be disturbed even if the trial court gave a wrong or insufficient reason for the ruling." *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). The trial court's ruling should be

–12–

reviewed "in light of what was before the trial court at the time the ruling was made." *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1). But such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2).

Moreover, the admissible purposes enumerated in rule 404(b)(2) are not "collectively exhaustive." *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). Evidence of an extraneous bad act is also "admissible to explain why a victim of sexual assault did not make a prompt outcry." *Wilson v. State*, 90 S.W.3d 391, 394 (Tex. App.—Dallas 2002, no pet.) (citing *Brown v. State*, 657 S.W.2d 117, 119 (Tex. Crim. App. 1983)); *see also Garrett v. State*, No. 05-13-00883-CR, 2015 WL 4751218, at *2 (Tex. App.—Dallas Aug. 12, 2015, pet. ref'd) (mem. op., not designated for publication) ("under Texas Rule of Evidence 404(b)(2), evidence of extraneous offenses or acts may be admissible to prove . . . the reason a sexual assault victim failed to report the assault promptly").

Testimony that appellant both abused S.H. and abused alcohol and drugs was relevant, at the very least, to explain why Isabel did not promptly report appellant's sexual assault. When it made its ruling, the trial court had before it information from

–13–

the hearing exhibits showing that: appellant threatened to kill or harm Isabel if she told anyone about the sexual assault; Isabel knew that appellant was physically abusive towards S.H.; Isabel feared appellant and thought he would follow through on his threat; and appellant was more violent and aggressive when he drank alcohol and used drugs.

Evidence of appellant's violent acts, therefore, made it more likely that Isabel's delayed report was not due to fabrication. And evidence of appellant's regular abuse of alcohol and drugs was relevant because it made him more likely to be violent and threatening towards Isabel. Accordingly, we conclude that the trial court did not abuse its discretion by ruling that evidence of appellant's abuse of S.H., alcohol, and drugs was admissible for a non-propensity purpose under rule 404(b). *See Brown*, 657 S.W.2d and 119 (holding that extraneous-offense evidence showing that the appellant unlawfully carried a weapon was "admissible to explain why [the complainant] did not make an immediate outcry"); *see also Mark v. State*, No. 14-01-01137-CR, 2003 WL 193070, at *5 (Tex. App.—Houston [14th Dist.] Jan. 30, 2003, pet. ref'd) (not designated for publication) (holding, in a sexual assault of a child case, that evidence of the appellant's prior violent acts were "relevant to a non-propensity or nonconformity purpose, i.e., why [the child victim] did not make a prompt outcry").

Relevant evidence may still be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing

–14–

the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tᴇx. R. Eᴠɪᴅ. 403. Analysis under rule 403 must balance (1) the inherent probative force of the evidence along with (2) the proponent's need for it against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–642 (Tex. Crim. App. 2006).

Rule 403 favors the admission of relevant evidence, and it is presumed that relevant evidence will be more probative than prejudicial. *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). This is particularly true in "he said, she said" sexual assault cases: rule 403 "should be used sparingly to exclude relevant, otherwise admissible evidence that might bear upon the credibility of either the defendant or complainant." *Hammer v. State*, 296 S.W.3d 555, 562 (Tex. Crim. App. 2009).

The trial court could have reasonably concluded that the probative value of the evidence was significant, and that the State's need for it was compelling. As discussed above, evidence about appellant's drug and alcohol use and his related abuse of S.H. was probative of whether Isabel was really sexually assaulted; it helped

–15–

explain her fear of appellant, which was the reason she delayed in reporting him.  In other words, the evidence made her outcry more credible, and the credibility of the complainant in a sexual assault case is the crux of the case, especially when, as here, he or she is the only eyewitness.

It is true that appellant's threat after the sexual assault could, by itself, explain Isabel's delayed outcry—so, arguably, the State did not need this evidence.  But appellant's threat, like the sexual assault, was only witnessed and thus testified to by Isabel.  Testimony from S.H. and Naomi that appellant was violent, particularly when he used alcohol and drugs, was therefore the only corroborating evidence the State had to explain Isabel's fear of appellant.

Furthermore, on the other scale, the trial court could have reasonably concluded that any tendency of the evidence to suggest a decision on an improper basis, to confuse or distract the jury from the main issues, or to be given undue weight was limited.  First, the charged offense of sexual assault of a ten-year-old child was more egregious than the extraneous acts involving abuse of alcohol, drugs, and S.H.  *See, e.g.*, *Robisheaux v. State*, 483 S.W.3d 205, 220 (Tex. App.—Austin 2016, pet. ref'd) (finding that any tendency of evidence of extraneous acts to suggest a decision on an improper basis was ameliorated by the fact that those acts "were no more serious than the allegations forming the basis for the indictment").  Isabel testified in some detail about the sexual assault, while her—and S.H.'s and

Naomi's—testimony about appellant's extraneous acts was succinctly given in general terms.

Second, the jury heard evidence that appellant appeared to be drunk during the charged offense and that just before the offense, he assaulted S.H., rendering her unconscious. Appellant does not complain about that evidence here, and we do not think the extraneous-act evidence added anything categorically different to the picture of appellant painted by that other evidence, other than showing that his violent acts and drug and alcohol abuse were not isolated but regularly occurring. Thus, it is unlikely that the extraneous-act evidence distracted the jury from the main issues or that the jury gave it undue weight.

Third, the jury was instructed to only consider extraneous acts for rule 404(b)- and article 38.37-admissible purposes, such as "the state of mind of the child." We must presume that juries follow jury charge instructions. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998) (en banc). And, finally, this testimonial evidence did not take an inordinate amount of time to develop. It was presented through three witnesses, and it made up a small portion of each of their testimonies.

While evidence that appellant committed extraneous acts of violence and abused alcohol and drugs was "undoubtedly prejudicial" to appellant, it was "not unfairly prejudicial" compared to its probative value. *See State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005). We cannot conclude that the trial court's

rule 403 balancing falls outside "the zone of reasonable disagreement." *See Montgomery*, 810 S.W.2d at 391. Consequently, we overrule appellant's two issues.

## CONCLUSION

We affirm the trial court's judgment.

/Ken Molberg/
KEN MOLBERG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
190747F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

STEWART CARTER HURST,
Appellant

No. 05-19-00747-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 354th District
Court, Hunt County, Texas
Trial Court Cause No. 32486CR.
Opinion delivered by Justice
Molberg. Justices Reichek and
Nowell participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered July 29, 2021